IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

     v.          19-CR-227-JLS

MICHAEL MASECCHIA,

       Defendant.

_____

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT MICHAEL MASECCHIA'S MOTION FOR COMPASSIONATE RELEASE

  THE UNITED STATES OF AMERICA, through its attorney, Michael DiGiacomo, United States Attorney for the Western District of New York, Joseph M. Tripi, Assistant United States Attorney, of counsel, hereby submits this response in opposition to defendant Michael Masecchia's motion seeking a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Mot. Reduction Sentence, ECF No. 1537 (May 9, 2025) ("Motion" or "Mot."). The defendant's motion should be denied because he failed to meet his burden to establish extraordinary and compelling circumstances that justify a reduction in his sentence, and because the factors pursuant to 18 U.S.C. § 3553(a) necessitate the defendant to serve the full 84-month sentence that this Court previously imposed.

### I. Background

#### A. Offense Conduct & Sentence

  This case arose from defendant Masecchia's role as a long-time drug-trafficker and organized crime associate, who was an integral member of the first-ever conspiracy in the

Western District of New York charging a corrupt DEA Special Agent with conspiring to accept bribes and to defraud the United States by protecting drug traffickers.

On June 4, 2020, the defendant was charged as part of a seventeen count Superseding Indictment along his co-defendant, a twenty-year veteran DEA Special Agent named Joseph Bongiovanni.  *See* ECF No. 46.  On December 9, 2020, the defendant pleaded guilty to Counts 15 and 17 of the Superseding Indictment.  *See* Plea Agreement at 1, ECF No. 68.  As part of his plea agreement, the defendant admitted that he was involved in the distribution of marijuana for *at least 20 years*, and that during that same 20-year period he possessed firearms to protect his illicit drug activities.  *Id.* at ¶4(a).  Moreover, as part of the factual basis of his guilty plea, the defendant admitted that former DEA Special Agent Joseph Bongiovanni provided law enforcement sensitive information to the defendant, which included "the names of potential cooperators and whether or not [the defendant] and others were under federal investigation, to enable [the defendant] and others to continue in their marijuana distribution activities undetected by other members of law enforcement."  *Id.* at ¶4(b).  Consistent with his decades of time in the illicit drug trade, law enforcement seized drugs and a variety of firearms from the defendant, including marijuana, cocaine, steroids, and $27,950 in bundled United States currency, during a search warrant executed at the defendant's residence. *Id.* at ¶4(c).[1,2]

---

[1]    One of the firearms was stolen by a coconspirator in the defendant's significant drug operation, Ron Serio, and was provided to the defendant.

[2]    The defendant possessed the firearms and drugs inside his residence right across the street from Williamsville South High School.

On May 4, 2022, this Court sentenced the defendant principally to seven-years, or 84 months, of incarceration pursuant to Rule 11(c)(1)(C). The defendant's 84-month sentence was 12 months less than the government requested, and 36 months less than the 120-month advisory guideline range calculated by the Court. *See* Sent. Trans., at 8-12, May 4, 2022. During sentencing, the government explained that the defendant faced a potential 15-year mandatory minimum sentence if he elected to proceed to trial, which would have been twice as long as the sentence the defendant ultimately received. *Id.* at 10. In support of his request for an 84-month sentence, the defendant focused essentially upon the same things that are currently being proffered in support of his compassionate release motion, including the support he has from his family and friends, and the fact that he was undergoing cancer treatment. At sentencing, the defendant's attorney stated:

> The other thing, Judge, that the Court is aware of is that you've been kind enough to grant us a number of adjournments of this sentence, so that Mike could go for his cancer treatments. Even though he's a, you know, big, strong looking guy, he's got some bad cancer. And thankfully, it's in remission, which is why we're here. We're not asking for another adjournment. But one thing that we would ask the Court to consider, Judge, is voluntary surrender. […] because he is going to need some medical attention. It's set forth in the presentence report that he needs these regular check-ups and all the rest of it. Again, we're not looking for sympathy with that. We're not asking for an adjournment or anything, but we're just asking if the Court would consider a voluntary surrender and a sentence of not more than seven years.

*Id.* at 20-23; *see also* ECF Nos. 159 (requesting adjournment of sentencing and describing treatment at Roswell Park Cancer Institute for lymphoma); 279 (letter purporting to describe medical condition and cancer prognosis).

### B.    Additional Factual Information Bearing Upon the Defendant's Dangerousness

Since the time of the defendant's guilty plea, his co-defendant, former DEA Special Agent Joseph Bongiovanni, proceeded to trial and was convicted of numerous crimes, including, among others, conspiracy to defraud the United States and to accept bribes for protecting the defendant and others, and conspiracy to distribute controlled substances with the defendant and others.  *See* ECF Nos. 867, 880, 1283, 1285.

Now, years after the defendant's guilty pleas, there is public testimony from several witnesses further elucidating the extent of the defendant's criminal conduct.  Specifically, trial testimony during the trials of former DEA Special Agent Joseph Bongiovanni established that the defendant admitted to a coconspirator that he is a member, and soldier, in the Buffalo La Cosa Nostra family, or mafia.  *See* Tr. Tran., at 44, 81-82, ECF No. 1178, (dated Aug. 28, 2024) (Test. Louis Selva);[3] Tr. Tran., at 16–17, ECF No. 1213, (dated Sept. 4, 2024) (Test. Dave Turri) (testifying that he, an IRS Special Agent detailed to the DEA, emailed the defendant informing him that Masecchia "is an associate and possibly a made member of the Buffalo LCN family); *see also* ECF No. 1488, at n. 29 (Govt. Resp. in Opp. to Mot. to Vacate).[4]

---

[3]    Explaining as far back as their late 20s, the former DEA Special Agent Joseph Bongiovanni and defendant's Masecchia's drug trafficking co-conspirator, Lou Selva, discussed whether Mike Masecchia was an Italian Organized Crime (IOC) (also known as La Cosa Nostra) member, and that Masecchia confirmed his status as a soldier in the Buffalo IOC family to Selva; that Selva reported Masecchia's status as an IOC member to the DEA SA Bongiovanni; and that Bongiovanni knew of Masecchia's status as an IOC figure and marijuana trafficker while providing protection to Masecchia's drug organization.

[4]    For an extensive rendition of the evidence that implicated the defendant in serious criminal activity for decades as a member of a drug organization that was protected by a corrupt DEA Agent, please see ECF No. 1488, the government's response in opposition

Trial testimony also established that the defendant told a coconspirator that he had to essentially kick up portions of his lucrative drug proceeds to individuals above him in the criminal organization. *See* Tr. Tran., at 37, ECF No. 1178, (dated Aug. 28, 2024) (Test. Louis Selva).[5] Moreover, public trial testimony established that he was a feared individual, and that in his younger days he built part of his reputation, and his nickname, which is the "Gorilla," by robbing people while wearing a gorilla mask. *See* Tr. Tran., at 171, ECF No. 1178, (dated Aug. 28, 2024) (Test. Louis Selva) ("Masecchia was a big tough guy."); *see also* Tr. Tran., at 27, (dated Mar. 11, 2024) (Test. Ron Serio) ("Because I heard [Masecchia] used to rob bank drops, and he'd wear a gorilla mask.").[6]  Now that the identities of numerous witnesses

---

to [Bongiovanni's] motion for a Rule 29 judgment of acquittal, which is incorporated herein by reference as though set forth fully herein.

[5]  "[Masecchia] said that he had people to answer to. As this thing grew, as he was making money, that he to pay people as well."

[6]  It does not appear the transcript is docketed, so it is excerpted in pertinent part here:

```
7   Q.  Did you have a nickname that you called Masecchia?

8   A.  The Gorilla.

9   Q.  Why did you have a nickname for him the Gorilla?

10  A.  Because I heard that when he used to rob bank drops, and

11  he'd wear a Gorilla mask.

12  Q.  Was that back in the day?

13  A.  Yeah, that was before I knew him.

14  Q.  How long before you knew him?

15  A.  I don't know his specifics.

16  Q.  Do you know who he got in trouble doing those robberies

17  with?

18  A.  I know he got in trouble with Wayne Anderson.
```

against the defendant have been identified to the defendant, it is paramount that the defendant should serve his full sentence.

### C.    The Defendant's Compassionate Release Motion

The defendant's compassionate release motion does not present any new information, much less establish extraordinary or compelling circumstances. The defendant's motion focuses primarily upon a cancer diagnosis that was known to the Court at sentencing, and is supported by the declaration of defense experts[7] who: (1) have not examined the defendant (*see* ECF No. 1537-1 at ¶3); (2) have not spoken directly to the defendant (*id.)*; (3) have not spoken to any of the doctors at the Bureau of Prisons or Duke urology who have examined and treated the defendant (*id.)*; (4) do not opine that the defendant has a terminal medical condition (*id.* at ¶¶ 1-10); (5) have not visited the BOP facility at Butner where the defendant is housed (*id.*); (6) do not opine that the defendant's condition is such that he cannot take care of himself in prison (*id.*); (7) acknowledge that the defendant's ███████ condition is considered "low risk," (*id.* at ¶4); (8) do not claim that the defendant presently has ████ (*i.e.,* "he was found to be cancer free in December 2021[…]) (*id.* at ¶¶ 5-6); and (9) do not include a review of any of the defendant's medical records in 2025. *Id.* at 7-11.[8]    The defense

---

[7]    This compassionate release motion is brought on the defendant's behalf by an organization, The Last Prisoner Project, which files compassionate release motions for individuals who have been sentenced for marijuana crimes. While the defendant's marijuana trafficking and possession of firearms in furtherance of drug trafficking are serious and dangerous crimes—the defendant's background as a member of organized crime, and the public corruption that permitted his drug trafficking to continue unabated for years, places the defendant's case in a far more serious light than the defendant's motion acknowledges.

[8]    The chart of medical records reviewed by defense experts appears to begin on 12/13/2021 and end on 12/5/2024.

assertions rely heavily upon the specious words of defendant—a convicted felon whose self-serving assertions should be afforded minimal weight.

### D.    The Defendant's BOP Medical Records

The government is providing the defendants 2024[9] and 2025[10] BOP medical records as **Exhibit A**, under seal. Those records reveal consistent medical treatment on a variety of issues that have been resolved, ██████████████████████████████████. ██████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████ ████████████████

As an example of the defendant's mindset and ability to exercise control of his treatment, on January 29, 2025, ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

---

[9]    The 2024 records include records pre-dating 2024 .

[10]    The 2025 records include records from October 2, 2024, until May 13, 2025.

[11]    ████████████████████████████████████████████
████████████████

[12]    Note Date: 10/07/2024.

[13]    Note Date: 12/13/2024 also reads in pertinent part: ████████████████
████████████████████████████████████████████

On February 13, 2025, the defendant had a follow-up with ███████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████    ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████  ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████

        ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

———————————————————

    ██    ██████████████████████████████████████████████████

████████████



On May 13, 2025, the date of the defendant's most recent medical treatment as of the date the government requested records, indicated that the defendant had no complaints—and certainly no complaints about lack of adequate care of the sort he alleges in his compassionate release motion. Indeed, if anything, the records establish that defendant regularly exercises autonomy over his medical care, for example, by ███████████████████████████ ██████████████████████████" The defendant's medical records demonstrate that he receives consistent and appropriate medical treatment. The defendant's ███████ are actively monitored, and he has adequate access to medical professionals who have sent him for ████████████████ ██████████, ██████████████████████████████ ██████ The defendant's medical records are devoid of the type of frivolous, self-serving, and

results-oriented complaints that the defendant proffers in support of his motion for compassionate release.[15,16]

---

[15]    The 2024 portion of Exhibit A references



[16]    The 2024 portion of Exhibit A references

###### E.    Administrative Exhaustion

The defendant has not provided a copy of the Warden's March 13, 2025, letter denying his request for compassionate release, but according to the defendant's counsel the defendant has exhausted his administrative remedies.[17] *See* Doc. No. 1537 at 11.

###### F.    Defendant's Purported Rehabilitation

The defendant was a college educated professional, who was formally employed as a teacher but who, in reality, was an organized criminal, involved in a lucrative drug operation, protected by a corrupt DEA agent.  Against this backdrop, it is inconsequential that the defendant has taken some courses while inside prison—what else is he going to do with his time? His options are to sit in his cell or to participate in programming.  In any event, rehabilitation alone "shall not" be considered an extraordinary and compelling reason for a sentence reduction. 28 U.S.C. § 994(t). ███████████████████████

████████████████████████████████████

████████████████    *See* **Exhibit B**, attached (disciplinary record).

###### G.    Procedural History

As of the time of his filing, the defendant is projected to be released on July 4, 2028, and is projected to become eligible for home detention on January 4, 2028.  *See* **Exhibit C**, attached (sentencing computation records).  The defendant began serving his sentence on

---

[17]    The government does not currently possess a copy of the Warden's letter to the defendant, but the government will endeavor to obtain a copy before oral argument.

June 8, 2022,[18] which means that as of the date of his compassionate release motion (filed on May 9, 2025), he has served 1066 days, or less than 3 of the 7-year sentence imposed by the Court.

### Applicable Law

Under 18 U.S.C. § 3582, as amended by the First Step Act, the court "may not modify a term of imprisonment once it has been imposed," except that:

> [T]he court, upon motion of the [the BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).

"Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf." *United States v. Corbett*, No. 10 Cr. 184 (PAE), 2023 WL 8073638, at *3 (S.D.N.Y. Nov. 21, 2023). But in 2018, Congress enacted the First Step Act and "authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam). The Sentencing Commission is responsible for "describ[ing] what should

---

[18]    The Court granted voluntary surrender at the time of sentencing.

be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Pursuant to that authority, even before the First Step Act was enacted, the Sentencing Commission promulgated a policy statement—§ 1B1.13 of the Guidelines—concerning sentence reductions under § 3582, which explained, among other things, what constitutes an extraordinary and compelling reason for a sentence reduction.

In September 2020, the Second Circuit held that this policy statement "applied only to a 'motion of the Director of the Bureau of Prisons,' *see* U.S.S.G. § 1B1.13 (historical note), and not 'to compassionate release motions brought by defendants.'" *Corbett*, 2023 WL 8073638, at *3 (quoting *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020)). As a result, the Second Circuit explained that the policy statement did not "constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." *Brooker*, 976 F.3d at 236. Still, though § 1B1.13 did not govern compassionate release motions filed by a defendant, district courts were able to "look[] to § 1B1.13 for guidance in the exercise of [their] discretion" when considering such a motion. *United States v. Rodriguez*, No. 16 Cr. 07 (AJN), 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020).

The Sentencing Commission's subsequent amendment to the Guidelines to extend § 1B1.13, "to also cover defendant-initiated petitions" confirmed the propriety of this approach. *Corbett*, 2023 WL 8073638, at *3 (citing U.S. Sent'g Commission, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023)). "The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated." *Id.*

13

As amended, § 1B1.13 of the Guidelines explains what circumstances, "singly or in combination," constitute extraordinary and compelling reasons for release. *Id.* These include, at a high level, certain medical circumstances of the defendant, the defendant's advanced age, certain family circumstances, whether the defendant was the victim of abuse while in custody, other circumstances of similar gravity, and changes in law that make the defendant's sentence unusually long. *See* U.S.S.G. § 1B1.13(b).[19]

---

[19]    Specifically, U.S.S.G. § 1B1.13(b)(1) identifies the following four circumstances as supplying "extraordinary and compelling reasons" for release:

(A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(B) The defendant is—(i) suffering from a serious physical or medical condition;

(ii) suffering from a serious functional or cognitive impairment, or

(iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances—

(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

The term compassionate release is something of "a misnomer," as the district court retains its broad sentencing discretion, *Brooker*, 976 F.3d at 237, and the defendant bears the burden of showing that he meets the strict statutory requirements, *United States v. Jones*, 17 F.4th 371, 375 (2d Cir. 2021).

Before a court can grant a sentence reduction, there are three requirements that must be met: (1) "absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities;" (2) the court "must consider the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable;" and (3) "the inmate must demonstrate that his proffered circumstances are indeed 'extraordinary and compelling' such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed." *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A)(i)). Thus, "extraordinary and compelling reasons are necessary— but not sufficient—for a defendant to obtain relief under § 3582(c)(1)(A)." *Jones*, 17 F.4th at 374.

A district court may consider the "extraordinary and compelling" and § 3553(a) prongs in any order and may deny relief based on one or both grounds. *See Keitt*, 21 F.4th at 73 (discussing § 3553(a) alone as basis for denial); *Brooker*, 976 F.3d at 236-37 (discussing "extraordinary and compelling" reasons alone as basis for denial). These determinations are entitled to "the same deference" as "a district court's imposition of sentence based on its determination of the § 3553(a) factors." *United States v. Seshan*, 850 F. App'x 800, 801 (2d Cir.

15

2021) (Summary Order) (citing *United States v. Smith*, 982 F.3d 106, 110-11 (2d Cir. 2020); *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020)).  A defendant's good behavior, by itself, is not a basis to grant compassionate release.  *See United States v. Allee*, 2022 WL 4368280 at *3 (W.D.N.Y. Sept. 21, 2022) (collecting cases).

A defendant seeking a sentence reduction under the relevant guideline provision— U.S.S.G. § 1B1.13(b)(1)(C)—must show that 1) "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care"; 2) this medical care is "not being provided"; and 3) without that care "the defendant is at risk of serious deterioration in health or death." *United States v. Radulescu*, No. 19-CR-651 (SHS), 2024 WL 4200388, at *1 (S.D.N.Y. Sept. 16, 2024), *reconsideration denied*, No. 19-CR-651 (SHS), 2024 WL 5220421 (S.D.N.Y. Dec. 26, 2024) (citing U.S.S.G. § 1B1.13(b)(1)(C)).  Compassionate release, even based on dire medical or family circumstances, should be a "rare" and "extraordinary" event - as § 3582(c)(1)(A)'s definitional terms themselves connote. *United States v. Willis*, 382 F. Supp.3d 1185, 1188-89 (D.N.M. 2019) (compiling cases; citations omitted); *United States v. Johns*, 2019 WL 2646663 *2 (D.Ariz. June 27, 2019); *see also Allee at *3, supra.*  This is particularly so where the Court "was well aware of [a] defendant's health conditions at the time of sentencing."  *United States v. Davis*, No. 19-CR-199-RJA, 2025 WL 271645, at *6 (W.D.N.Y. Jan. 23, 2025).  A defendant's opinion that he may be able to obtain better or more consistent care outside of the BOP "does not mean that continuing medical care in the BOP would cause 'serious deterioration in [his] health or death.'"  *United States v. Purpera*, No. 7:18-CR-00019, 2024 WL 329541, at *3 (W.D. Va. Jan. 29, 2024).

Of course, the "existence of 'extraordinary and compelling reasons' for a reduction does not mean that a district court *must* release the defendant." *United States v. Madoff*, 465 F.Supp.3d 343, 349 (S.D.N.Y. 2020) (emphasis original). Indeed, prior to reducing a defendant's term of imprisonment under § 3582(c)(1)(A), the district court must consider the factors set forth in § 3553(a), which include, *inter alia*, "the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities." *United States v. Roney*, 833 F. App'x 850, 852 (2d Cir. 2020) (unpublished) (citing 18 U.S.C. § 3553(a)).

The defendant, as the proponent of the motion, bears the burden of proving that he is entitled to the requested relief under § 3582. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction.") (citing *Butler*); *United States v. Givens*, No. 14 Cr. 546-09 (CM), 2020 WL 4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar). Compassionate release is "an extraordinary and rare event." *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

## II.  Discussion

In his Motion, the defendant argues that his medical condition requires him to be released because his care within the BOP is inadequate.[20]  Specifically, the defendant claims that he is "worthy of compassionate release under § 1B1.13(b)(1)(C), which reads: 'The defendant is suffering from a medical condition that long term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."  *See* ECF No. 1537 at 3.  The Court should deny the defendant's motion.  His circumstances are neither extraordinary, nor compelling, and were known to the Court at the time of sentencing.  Nor do the § 3553(a) factors counsel in favor of a reduction, given the gravity the defendant's decades long involvement in drug trafficking and firearms possession connected to his role in a criminal organization wherein he was integral in procuring the illicit protection of a corrupt DEA Special Agent.  Accordingly, the Court should promptly deny his motion.

### A.    The Defendant has Failed to Demonstrate Extraordinary and Compelling Reasons Justifying a Reduction in his Sentence.

In his motion, the defendant fails to cite a single case wherein a defendant with ███ ██████████████████████████████████████ established an extraordinary and compelling reason to justify a reduction in sentence.

---

[20]    A Department of Justice Office of Inspector General (DOJ-OIG) report, issued May 20, 2025, (available at: https://oig.justice.gov/sites/default/files/reports/25-057.pdf) is inapposite.  The OIG report addresses the BOP's issues with routine colorectal cancer screenings and offers 13 recommendations that the BOP has agreed to follow. ████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████

18

As set forth above, the defendant's motion relies heavily upon his interested and biased claims, unsupported by his medical records, that he is not receiving adequate care. To buttress his claims, the defendant has provided a declaration from doctors who: (i) have not reviewed his most recent medical records—including any records from 2025; (ii) have not examined the defendant; (iii) have not spoken directly to the defendant; (iv) have not spoken to any of the doctors at the Bureau of Prisons or ▮▮▮▮▮▮ who have treated and examined the defendant; (v) do not opine that the defendant has a terminal medical condition; (vi) have not visited the BOP facility at Butner where the defendant is housed; (vii) do not opine that the defendant's condition is such that he cannot take care of himself in the BOP; (viii) acknowledge that the defendant's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; and (ix) do not claim that he presently has ▮▮▮▮. *See* Section I(C), *supra*.

Contrary to the defendant's assertions and his experts' conclusory statements, the defendant's medical records reveal consistent treatment and follow-up care. *See* **Exhibit A**. Notes in his medical records indicate that he is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮ As described above, *see also* **Exhibit A**, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ As recently as May 13, 2025, the defendant reported that he had no complaints.

Simply put, nowhere does the defendant meet his heavy burden to demonstrate that the BOP is unable to care for an inmate with his conditions. Even assuming the defendant's conditions require long-term or specialized care, the presence of a health condition requiring long-term or specialized care does not by itself establish an extraordinary and compelling circumstance warranting a sentence reduction. *See United States v. Radulescu*, No. 19-CR-651 (SHS), 2024 WL 4200388, at *1 (S.D.N.Y. Sept. 16, 2024), *reconsideration denied*, No. 19-CR-651 (SHS), 2024 WL 5220421 (S.D.N.Y. Dec. 26, 2024). Here, as in *Radulescu,* "while [the defendant] is entitled to his interpretation of his medical records, those records contain "multiple medical appointments with BOP staff members, including medical doctors, the prescription of various medications, as well as referrals to outside medical specialists for consultations and tests… and [he] has failed to show that long-term or specialized medical care [ ] is not being provided" or that he is "at risk of serious deterioration in health or death." 2024 WL 5220421, at *1 (S.D.N.Y. Dec. 26, 2024). At best the defendant has proffered speculative claims that his health will diminish and that he has a strong preference for treatment outside of prison, but that "does not mean that continuing medical care in the BOP would cause 'serious deterioration in [his] health or death.'" *See Purpera*, 2024 WL 329541, at *3.

Numerous courts both inside and outside of the Second Circuit have rejected compassionate release claims predicated upon cancer diagnoses, including prostate cancer. For example, in *United States v. Sadleir*, the court denied a defendant's compassionate release motion and rejected the defendant's claim that he was not receiving adequate medical care for, among other things, prostate cancer, as follows:

20

As to medical care, the BOP records attached to the Government's opposition indicate that Sadleir has received regular medical examinations and treatment. *See generally* Gov't Opp. Ex. A. This includes physical examinations, medications for high blood pressure, active surveillance of his prostate cancer, and medical scans. Sadleir's conclusory allegations that he has not received adequate care are unsubstantiated. And Sadleir's suggestion that the BOP might be unable to meet his needs in the future—if, for instance, he requires further treatment for his prostate cancer—is speculative. As substantiated in numerous cases, the BOP has access, including pursuant to contracts, to medical professionals and facilities capable of providing appropriate attention and care. *See, e.g.*, *United States v. Mood*, No. 19 Cr. 113 (VB), 2020 WL 3256333, at *1 (S.D.N.Y. June 16, 2020) (the BOP has "effectively managed" the defendant's health issues with "routine monitoring and medication"); *United States v. Binday*, No. 12 Cr. 152 (CM), 2020 WL 4017822, at *6 (S.D.N.Y. July 16, 2020) (the BOP "is capable of providing ... adequate medical care, and appears to be doing so" in the defendant's case, given his detailed health records and the BOP's comprehensive treatment plan); *United States v. Little*, No. 20 Cr. 57 (GBD), 2023 WL 3570965, at *2 (S.D.N.Y. May 18, 2023) (the BOP "is monitoring and managing" the defendant's "renal and gastrointestinal conditions in an adequate manner," having referred her to outpatient specialists and adopted their prescribed medical regiment).

No. 20 CR. 320 (PAE), 2023 WL 6497727, at *4 (S.D.N.Y. Oct. 5, 2023), *appeal withdrawn*, No. 23-7443, 2024 WL 4588750 (2d Cir. Feb. 28, 2024); *see also United States v. Sabir*, 481 F. Supp. 3d 270, 275 (S.D.N.Y. 2020) (no "extraordinary and compelling" reasons for release where 66-year-old defendant suffered from prediabetes, hypertension, and asthma, and likely had prostate cancer); *United States v. Shakur*, 498 F. Supp. 3d 490, 499-500 (S.D.N.Y. 2020) (denying compassionate release to 69 year old despite defendant's cancer upon analysis of 3553(a) factors); *United States v. Wiggins*, 472 F. Supp. 3d 23, 24 (W.D.N.Y. 2020) (compassionate release denied during COVID-19 pandemic where 52 years old defendant claimed anemia, abnormal glucose and prostate cancer and was not especially vulnerable because of advanced age); *United States v. McCutcheon*, No. 14-CR-26S (1), 2021 WL 732693, at *4 (W.D.N.Y. Feb. 25, 2021) (54 year old defendant's medical conditions, including

asthma, high blood pressure, and prostate cancer, were not extraordinary and compelling reasons to reduce sentence under the medical condition section of U.S.S.G. § 1B1.13 where there was no demonstration that the conditions are terminal illnesses (*i.e.*, a serious and advanced illness with an end-of-life trajectory), nor do they constitute a serious condition, impairment, or age-related deterioration that substantially diminishes McCutcheon's ability to provide self-care); *United States v. Jones*, No. 3:99-CR-264-1 (VAB), 2022 WL 3703954, at *4 (D. Conn. Aug. 26, 2022) (fear of prostate cancer with evidence of screenings was not extraordinary and compelling); *United States v. Proctor*, No. 21-2457, 2022 WL 1261762, at *1 (7th Cir. Apr. 28, 2022) (affirming district court's denial of a compassionate-release motion despite defendant's rare blood cancer); *United States v. McFadden*, No. 20-40801, 2022 WL 715489 (5th Cir. Mar. 9, 2022) (affirming denial of compassionate release to an inmate concerned about the risks of COVID-19 and suffering from diabetes, high blood pressure, prostate cancer, and end-stage renal disease); *United States v. Reed*, 464 F. Supp. 3d 854, 861 (E.D. La. 2020) (denying compassionate release to an inmate with high blood pressure, diabetes, coronary artery disease, and prostate cancer when the medical records showed that he was receiving medical care for all conditions and that his ability to provide self-care was not substantially diminished); *United States v. Mendoza-Garibay*, No. 4:13-cr-00281, 2022 WL 2673231, at *6 (E.D. Tex. July 11, 2022) (diagnosis of prostate cancer, high blood sugar, and high cholesterol was not an extraordinary or compelling circumstance warranting compassionate release, even when combined with the risks of the COVID-19 virus); *United States v. Sanchez-Partida*, No. 2:09-cr-00378-001, 2022 WL 2118975 (S.D. Tex. June 13, 2022) (denying compassionate release to an inmate concerned about the risks of COVID-19 and suffering from high blood pressure, hyperlipidemia, diabetes, and "possible prostate cancer");

*United States v. Mateo*, No. H-01-521-1, 2022 WL 4348472, at *3 (S.D. Tex. Sept. 16, 2022) (denying compassionate release despite defendant's prostate cancer); *United States v. Herrera*, No. 01 CR 01098, 2023 WL 3947608, at *3 (N.D. Ill. June 12, 2023) (denying compassionate release despite defendant's prostate cancer and other medical conditions).  Moreover, it is instructive, consistent with the defendant's heavy burden, that even during the COVID-19 pandemic "courts that granted compassionate release on [the basis of the pandemic and underlying conditions] largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns."  *United States v. Thompson*, 984 F.3d 431, 434–35 (5th Cir. 2021).

At bottom, the defendant's claims that his ███████████████████████████ ███████████████████████████ will worsen are completely speculative. At best, the defendant has established that he would like to be released after serving a small portion of his sentence to seek treatment outside of prison.  While he is entitled to his biased opinions, the defendant is receiving appropriate care, and he has failed to meet his burden to establish extraordinary and compelling circumstances warranting a reduction in his sentence.

**B.    The Section 3553(a) Factors Counsel Against a Reduction in Sentence.**

Even if the Court finds that defendant Masecchia's proffered bases for compassionate release amount to "extraordinary and compelling," it should still deny his motion after considering the factors set forth in § 3553(a).  These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the needs "to reflect the seriousness of the offense, to promote respect for the law, and to

provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." § 3553(a)(1), (a)(2)(A)–(C).

First, the Court should find that granting a reduction in the defendant's sentence, which was within an agreed upon 11(c)(1)(C) range, would undermine the purpose of the defendant's sentence. *See United States v. Scott,* No. 04-CR-6102 (CJS), 2024 WL 2748116, at *17 (W.D.N.Y. May 29, 2024) (collecting cases). As set forth above, the defendant's 11(c)(1)(C) range was below the advisory guidelines calculated by the Court and was significantly less time in prison than the defendant was facing if he had proceeded to trial and were convicted.[21] At sentencing, the Court stated that the defendant's offense "was serious" and that "[o]ver the span of a couple of decades, you harvested and distributed marijuana into the community and possessed firearms in furtherance of that drug trafficking activity, obviously heightening the danger to the community associated with your actions." *See* Trans. Sent., at 28:5-9 (May 4, 2022). As part of his plea agreement, the defendant agreed that 1,000 to 3,0000 kilograms of marijuana was a "conservative estimate," of the amount of marijuana involved in his long-term distribution activity. ECF No. 68 at ¶ 4(e).

Although the defendant was involved in decades worth of drug trafficking activity, the government explained at sentencing that a principal reason for the government agreeing to the 11(c)(1)(C) plea was so that the public and other members of law enforcement would have the benefit of the defendant's public acknowledgement "that Mr. Bongiovanni provided law

---

[21]    Codefendant Bongiovanni's advisory guidelines following trial convictions are substantially higher than the defendant's sentence.

enforcement sensitive information to the defendant, including names of potential cooperators. And whether or not Masecchia, and others who were involved in his marijuana trafficking, were under Federal investigation, to enable Masecchia and others to continue in their marijuana distribution activities undetected by other members of law enforcement." *Id.* at 11.

Now, by virtue of multiple trials and convictions as against the defendant's co-defendant, former DEA Special Agent Bongiovanni, it is clear that the defendant's decision to forego filing pre-trial motions and to plead guilty early was prudent.  Under the circumstances, reducing his sentence further would undermine the seriousness of the defendant's offense, erode the public's trust, and run counter to the Court's obligation to promote respect for the law.  *See Roney,* 833 F. App'x at 854 ("courts regularly consider whether compassionate release would be consistent with § 3553(a) by considering how early release would impact the aims of the original sentence."); *see also* 18 U.S.C. § 3553(a)(2)(A)-(C), (3), (6).

Second, the defendant's history and characteristics involves significant ties to drug-trafficking, firearms, organized crime, and public corruption.  As set forth in the defendant's initial PSR, ███████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████ Wayne Anderson would later become a member of the defendant's drug trafficking network, and in November 2012, the defendant made sure that

codefendant Joseph Bongiovanni's corrupt protection extended to Wayne Anderson, who was part of the defendant's drug organization. *See* ECF No. 1488 at 19-21.[22]

In addition to the drug trafficking activity the defendant admitted as part of his plea agreement, the trial evidence in *United States v. Bongiovanni* also established:

- The defendant was a principal member of a large-scale drug trafficking organization involved in outdoor marijuana grows, international shipments of drugs, and trips to New York City to procure marijuana, *see id.* at 6-11.

- The defendant was a target of DEA Las Vegas in 2004, but the case never progressed after codefendant DEA SA Bongiovanni injected himself, *see id.* at 12-13.

- The defendant, when seeking to expand his drug operations, vouched for his operation as being protected by former DEA Special Agent Bongiovanni, *see id.* at 13.

- The defendant, as operations expanded and Ron Serio's prominence grew in the drug organization grew, spearheaded plans to bribe DEA Special Agent Bongiovanni, *see id.* at 13-16.

- The defendant, after his coconspirator Ron Serio's arrest, ordered another coconspirator, Lou Selva, to destroy evidence, *see id.* at 43. ("Masecchia informed Selva of Serio's arrest and ordered Selva to 'start clearing things out.'").

*See also* ECF No. 1488-1 (Appendix A). Additionally, to the extent the defendant is a "zero-point offender" under the Guidelines, *see* ECF No. 1537 at 21, that only reflects the reality that conspiratorial organized criminal activity is difficult to detect. Therefore, as applied to the facts of this case, the defendant's lack of detected criminal activity is further evidence of his dangerousness as opposed to evincing a lack of dangerousness.

---

[22]    Using ECF page numbers.

Finally, the defendant is a danger to the community. Referring to him as some type of pillar of the community (*i.e.*, his "remarkable history in the community," *see* ECF No. 1537 at 19) because he was able to blend in polite society as a teacher, while committing sustained drug trafficking activity *for decades*, does a disservice to the public and is antithetical to the term "remarkable". The defendant is a criminal who, since the time of his guilty plea and sentence, has been publicly exposed as a self-admitted member of an organized crime family. *See* Section I(B), *supra*. The defendant is also a high-level drug trafficker, who procured the protection of a corrupt DEA agent. In doing so, the defendant learned the identity of multiple DEA informants—identities that were supposed to be heavily protected as the DEA's "most guarded secret" because informants are paramount to the DEA's mission of enforcing the drug laws of the United States. *See* Tr. Tran., at 43, ECF No. 1161, (dated Aug. 12, 2024) (Test. Frank DiCarlo); Tr. Tran., ECF No. 1480, (dated Aug. 7, 2024); *see also* ECF No. 1488 at 30 n. 116. Simply put, the defendant's conduct, and the history exposed during the *Bongiovanni* trial, strikes at the heart of the public's trust and demonstrates the breadth of the defendant's criminal connections. If there was one person witnesses were afraid of during the *Bongiovanni* trial—it was this defendant.[23],[24]

---

[23]    In the plea agreement the government also reserved its right to "respond…to any statements made on the defendant's behalf that are inconsistent with information and evidence available to the government." *See* ECF No. 68 at ¶18(b).

[24]    *See e.g.,* Tr. Tran., at 108, (dated Mar. 12, 2024) (Test. Ron Serio) (describing that people "feared" the defendant), as follows:

## III.  CONCLUSION

To release the defendant now, far short of the completion of his bargained-for sentence, and without any real new justification, would result in a sentence that fails to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.  The defendant is receiving appropriate medical treatment, and his health is essentially no different than it was the day he was sentenced and, as such, his circumstances are neither extraordinary nor compelling.  He has been a lifelong criminal operating in the drug world undetected while protected by a corrupt federal agent—all while blending into polite society—and, as a result, the 3553(a) factors weigh heavily against reducing his sentence.  Accordingly, the Court should deny his motion.

DATED:  Buffalo, New York, May 28, 2025.

Michael DiGiacomo
United States Attorney

BY:    s/ JOSEPH M. TRIPI
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5839
Joseph.Tripi@usdoj.gov

```
 8   Q.  Let's talk about who Mike Masecchia is.  Do you know him
 9   to be an intimidating guy?
10   A.  He is.
11   Q.  How -- why would you say that?
12   A.  Just from hearing things on the streets, he got in a lot
13   of fights, and people feared him.
14   Q.  Okay.  Was he a physically intimidating guy?
15   A.  Yeah, physically he was intimidating.
```

# EXHIBIT A

# BOP MEDICAL RECORDS

# EXHIBIT B

# BOP DISCIPLINARY RECORD

# EXHIBIT C

# BOP SENTENCING COMPUTATION