IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

        v.

MICHAEL MASECCHIA,

              Defendant.

19-CR-227-JLS
**(FILED UNDER SEAL)**

---

## GOVERNMENT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING MASECCHIA'S MOTION FOR COMPASSIONATE RELEASE

THE UNITED STATES OF AMERICA, through its attorney, Michael DiGiacomo, United States Attorney for the Western District of New York, Joseph M. Tripi, Assistant United States Attorney, of counsel, hereby submits this motion for reconsideration of the Court's May 30, 2025, Order granting the defendant's motion for compassionate release. *See* ECF No. 1556.

## I. RELEVANT BACKGROUND

The defendant—a long-time drug-trafficker and organized crime associate—was an integral member of the first-ever conspiracy in the Western District of New York in which a corrupt Drug Enforcement Agency ("DEA") Special Agent faced charges for accepting bribes and defrauding the United States by protecting drug traffickers.

On June 4, 2020, the grand jury returned a seventeen-count Superseding Indictment including the defendant and Joseph Bongiovanni, a twenty-year veteran DEA Special Agent. *See* ECF No. 46. On December 9, 2020, the defendant pleaded guilty to Counts 15 and 17 of the Superseding Indictment. *See* Plea Agreement at 1, ECF No. 68. As part of his plea

agreement, the defendant admitted that he was involved in the distribution of marijuana for *at least 20 years*, and that, during that same 20-year period, he possessed firearms to protect his illicit drug activities. *Id.* at ¶4(a). Moreover, as part of the factual basis of his guilty plea, the defendant admitted that Bongiovanni provided law enforcement sensitive information to the defendant, which included "the names of potential cooperators and whether or not [the defendant] and others were under federal investigation, to enable [the defendant] and others to continue in their marijuana distribution activities undetected by other members of law enforcement." *Id.* at ¶4(b). The defendant further admitted that since 1999, he participated in distributing, as a "conservative estimate" 1,000 to 3,000 kilograms of marijuana. Consistent with the defendant's decades engaged in the illicit drug trade, law enforcement seized a variety of firearms, drug evidence—including marijuana, cocaine, steroids—and $27,950 in bundled United States currency, during a search warrant of his residence. *Id.* at ¶4(c).

On May 4, 2022, this Court sentenced the defendant to seven-years of incarceration pursuant to Federal Rule of Criminal Procedure ("FRCP") 11(c)(1)(C), which was 36 months less than the 120-month advisory guideline sentence calculated by the Court and one-year less than the government requested under the plea agreement. *See* Tr. Sent., [May 4, 2022] at 8-12. During the sentencing, the government pointed out that the defendant was facing a potential 15-year mandatory minimum sentence at trial, which was more than double the sentence the defendant received. *Id.* at 10. The defendant's sentencing arguments focused essentially upon the same things that were proffered in his compassionate release motion, including his family support, support from teachers he has worked with in the past, and the fact that he was undergoing cancer treatments. In fact, the defendant's attorney stated at sentencing:

The other thing, Judge, that the Court is aware of is that you've been kind enough to grant us a number of adjournments of this sentence, so that Mike could go for his cancer treatments. Even though he's a, you know, big, strong looking guy, **he's got some bad cancer**. **And thankfully, it's in remission**, which is why we're here. We're not asking for another adjournment. But one thing that we would ask the Court to consider, Judge, is voluntary surrender. […] because he is going to need some medical attention. It's set forth in the presentence report that he needs these regular check-ups and all the rest of it. Again, we're not looking for sympathy with that. We're not asking for an adjournment or anything, but we're just asking if the Court would consider a voluntary surrender and a sentence of not more than seven years.

*Id.* at 20-23 (emphasis added).

On May 9, 2025, the defendant filed a sealed emergency motion for compassionate release, which totaled 500 pages and included hundreds of pages of medical records. *See* ECF No. 1537.[1] The defendant's motion argued that he was "worthy of compassionate release under § 1B1.13(b)(1)(C), which reads: 'The defendant is suffering from a medical condition that long term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.'" *See* ECF No. 1537 at 3. Furthermore, the defendant claimed that he had exhausted his administrative remedies. *Id.* at 11.

On May 13, 2025, this Court ordered the government to respond by May 27, 2025, at 12 p.m., and scheduled oral argument for May 30, 2025. *See* ECF 1542. On May 27, 2025, the government requested a 24-hour extension of time, which the Court granted, and then timely filed its response prior to the deadline on May 28, 2025, at 12 p.m. *See* ECF Nos. 1547-50.[2] In response to the defendant's motion, the government asserted that the defendant did

---

[1] The government was not served a copy of the motion and received its copy by accessing the sealed filing on May 14, 2025.

[2] Upon receipt of the defendant's 500-page compassionate release motion with exhibits on May 14, 2025, the government requested defendant Masecchia's BOP file, which consisted of hundreds of pages of medical records, and other records. Upon review of the extensive file, the government learned that the

not establish "extraordinary and compelling" reasons for release based on his medical issues, and that the 18 U.S.C. § 3553(a) sentencing factors did not weigh in favor of release. Likewise, the government asserted that, with respect to exhaustion:  "The defendant has not provided a copy of the Warden's letter," denying compassionate release. *See* ECF No. 1550 at 11.[3]

On May 30, 2025, the District Court heard oral argument and issued a bench decision granting the defendant's motion for compassionate release, which was followed by a written order.  *See* ECF No. 1556.

## II.  **LEGAL FRAMEWORKS**

### A.    **Standard for a Motion for Reconsideration**

"Although the Federal Rules of Criminal Procedure do not specifically recognize motions for reconsideration, such motions have traditionally been allowed within the Second Circuit." *United States v. Gillespie*, 264 F. Supp. 3d 462, 466 (W.D.N.Y. 2017) (internal quotation marks omitted).  In reviewing motions for reconsideration in criminal cases, courts have looked to standards under the Federal Rules of Civil Procedure. *United States v. Clark*,

---

defendant's BOP file did not contain either the defendant's compassionate release request to the Warden, or the purported Warden's response letter.  Thus, the government made a follow-up request to BOP for the defendant's compassionate release request, and the purported Warden's letter.  However, given the tight filing deadline imposed by the Court, the government had to file its compassionate release response before it received information from BOP that Butner lacked both any record of receiving the defendant's compassionate release request or (logically) any response letter from the Warden to the defendant. During oral argument the government informed the District Court that, after its filing, it learned that BOP had no record of receiving a compassionate release request from the defendant, nor, contrary to the representation in the defendant's motion, a letter from the Warden to the defendant denying compassionate release.

[3] Approximately 18 minutes after the government filed its response to the defendant's motion for compassionate release, the BOP advised that they had no record of receiving a compassionate release request from the defendant or a letter from the Warden to the defendant denying compassionate release.

984 F.2d 31, 33-34 (2d Cir. 1993); *United States v. Demosthene*, 326 F.Supp.2d 531, 533-34 (S.D.N.Y. 2004). Reconsideration of a previous order is an "extraordinary remedy to be employed sparingly," and the standard for such motions is strict. *Gillespie*, 264 F. Supp. 3d at 466. "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kharshiladze v. Philips*, 2021 WL 1525869, at *1 (W.D.N.Y. Apr. 19, 2021); *see also  Virgin Atl. Airways v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992). "The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court." *Gillespie,* 264 F. Supp. 3d at 466 (quotation omitted). Thus, the rules function to ensure fairness such that courts considering a motion for reconsideration grant such motions where the movant demonstrates one of three grounds: (1) an intervening change in controlling law; (2) newly discovered evidence, previously unavailable; or, (3) the need to correct a clear error of law or fact that must be reconsidered to avoid manifest injustice. *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers and Lybrand*, 322 F.3d 147, 167 (2d Cir. 2003); *Bergen Atlantic Airways v. Natl. Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992); *United States v. Adegbite*, 877 F.2d 174, 178 (2d Cir. 1989); and, *Young v. Murray*, 2004 WL 1529234 (W.D.N.Y. 2004).

Furthermore, the government may move for reconsideration of the Court's decision and order granting the defendant's compassionate release order.  In *United States v. United States v. Rivera-Rodriguez,* the First Circuit addressed whether the government could move for

reconsideration of a district court's order granting a defendant's motion for compassionate release, holding:

> [B]ecause we do not regard the district court's compassionate release as a sentence, we do not question its authority to reconsider the order. As the government points out, no statutes similarly bar a district court from returning to its previously issued sentence reduction order. In this absence, we observe no comparable limits to the inherent authority of the district courts, after resolving compassionate release motions, to revisit their own orders on reconsideration. Therefore, we find the district court's exercise of jurisdiction over the government's reconsideration motion proper.

75 F.4th 1, 17 (1st Cir. 2023) (internal citations and punctuation omitted); *see also United States v. Brown*, 511 F.Supp.3d 431 (W.D.N.Y. Jan. 26, 2021) (considering and denying a defendant's motion for reconsideration of compassionate release), *aff'd*, 2021 WL 5872940 (2d Cir. 2021).

## B.    Governing Law for Compassionate Release Motions

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i):

> (1) in any case--
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction;…
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

6

U.S.S.G. § 1B1.13(b) sets forth six reasons that may constitute "extraordinary and compelling reasons" warranting compassionate release including:

(1) The medical circumstances of the defendant. U.S.S.G. § 1B1.13(b)(1); and […]

(5) Other circumstances or combinations of circumstances similar in gravity to the situations listed above, U.S.S.G. § 1B1.13(b)(5)[.]

The Guidelines policy statement describes "medical circumstances of the defendant" to include the circumstance where the defendant is suffering "from a medical condition that required long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." USSG § 1B1.13(b)(1)(C).

The defendant bears the burden of proving that he is entitled to the requested relief under § 3582. *See United States v. Jones*, 17 F.4th 371, 375 (2d Cir. 2021)*; United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a sentence reduction.") (citing *Butler*).

A district court may grant a compassionate release motion "*only* if three conditions are in place: administrative exhaustion (absent waiver or forfeiture by the government); satisfaction of the [18 U.S.C.] § 3553(a) [sentencing] factors; and extraordinary and compelling reasons." *United States v. Sanchez*, 2024 WL 4647668 at *1 (Nov. 1, 2024) (quoting *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (emphasis added)). "If a district court determines that one of those conditions is lacking, it need not address the remaining ones." *Id.* at 73. In other words, where a defendant fails to meet even one prong, the Court must deny the defendant's motion. *Id.*; *see also United States v. Pimentel*, No. 23-7096-CR, 2025 WL

783730, at *2 (2d Cir. Mar. 12, 2025) ("Because all conditions must be satisfied, it follows that if a district court determines that one of those conditions is lacking, it need not address the remaining ones." (internal quotation marks omitted)).

## III.  <u>LEGAL ANALYSIS</u>

This motion for reconsideration focuses upon the third ground justifying reconsideration, namely, the need to correct a clear error of law or fact that must be reconsidered to avoid manifest injustice.

The Court should reconsider its decision and order for three reasons.  First, the Court's holding that the defendant met the exhaustion requirement and/or that the exhaustion remedy was excused was contrary to law and fact.  The defendant did not exhaust his administrative remedies, which is mandatory claims processing rule and must be enforced when invoked.  *Keitt*, 21 F.4th at 71; *see also United States v. Saladino*, 7 F.4th 120, 124 (2d Cir. 2021).  Nor do the defendant's medical records support excusal of exhaustion because his cancer is not acute or life threatening.  *See United States v. Oberholzer*, No. 21-CR-475 (ALC), 2024 WL 4443879, at *2 (S.D.N.Y. Oct. 8, 2024).  Second, the Court erred in holding that the defendant's case satisfied the framework of U.S.S.G. § 1B1.13(b)(1)(C) because (a) the defendant's prostate cancer is "low-risk," (b) the defendant is receiving treatment in the form of active surveillance, which is both the recommended standard of care and course of treatment that he chose, and, (c) there appear to be no cases in the country of an individual being granted compassionate release for "low-risk" prostate cancer such that the defendant

did not establish "extraordinary and compelling" reasons for compassionate release.[4]  Third, the Court erred in failing to consider and appropriately weigh the 18 U.S.C. § 3553(a) factors, including the impact of compassionate release wherein the defendant—initially facing a 15 year mandatory minimum sentence—served less half of his prison sentence (slightly less than 3 years) pursuant to a FRCP 11(c)(1)(C) agreement entered between the parties that required him to serve seven-years (84 months).

### A.  The Court Clearly Erred or Acted Contrary to Law When it Determined that the Exhaustion Requirement Was Either "Satisfied" or "Excused."

"[T]he exhaustion requirement of Section 3582(c)(1)(A) is "[n]ot a jurisdictional limitation, but rather a claim processing rule, that consequently may be waived or forfeited by the government." *United States v. Jackson*, No. 21-CR-537-LTS, 2024 WL 4215741, at *2 (S.D.N.Y. Sept. 17, 2024) (quoting *Saladino*, 7 F.4th at 123).  Moreover, "[a]lthough less stern than a jurisdictional limitation, [m]andatory claim-processing rules must be enforced if properly invoked." *Id.* (quoting *Hamer v. Neighborhood Hous. Servs.*, 138 S. Ct. 13, 17 (2017)); *see also Keitt,* 21 F.4th at 71.  "The Supreme Court, and the Second Circuit, have made clear that, [w]here Congress specifically mandates, exhaustion [of administrative remedies] is required." *Id.* (internal quotation marks omitted).  Courts have recognized limited circumstances under which the exhaustion requirement may be excused, including where delay would result in "catastrophic health consequences." *Washington v. Barr*, 925 F.3d 109, 120 (2d Cir. 2019); *see also Oberholzer, supra.*

---

[4] To the extent the Court considered U.S.S.G. § 1B1.13(b)(5) as a basis to justify compassionate release, the Court relied upon the same facts and rationale underlying § 1B1.13(b)(1)(C) and thus constitutes clear error for the same reasons.

On May 30, 2025, prior to announcing its decision and analysis, the Court acknowledged that if it determined that "one of [the] conditions [required for compassionate release] is lacking, it need not address the remaining ones."  *See* Tr., Oral Argument [05-30-25] at 45; *see also Keitt* at 73.  Next, the Court held, without more, that "I think the exhaustion provision is satisfied or excused here."  *See* Tr., Oral Argument [05-30-25] at 45.  But the factual record belies this holding.

In his motion, the defendant represented that he submitted a letter request for a sentence reduction on March 4, 2025, *see* ECF No. 1537, Ex. 5., and that, "[o]n March 13, 2025, Mr. Masecchia **received a letter from the Warden denying him compassionate release**; thus Mr. Masecchia has exhausted his administrative remedies."  *See* ECF No. 1537 at 11 (emphasis added).  Neither the defendant nor the BOP records, however, included a copy of the Warden's letter.

When drafting its response, and operating with the information it had at the time, the government asserted that "[t]he defendant has not provided a copy of the Warden's March 13, 2025, letter denying his request for compassionate release, but according to the defendant's counsel the defendant has exhausted his administrative remedies," *see* ECF No. 1550 at 11, and that the government would "endeavor to obtain a copy before oral argument," *id.* at n. 17.  Approximately 18 minutes after the government filed its response, BOP communicated via email that "AIC Michael Masecchia, Reg. No. 28848-055 is housed at FCI Butner, and they have confirmed they do not have any compassionate release requests on file." During oral argument, the government raised the exhaustion issue:

> 18 minutes after I filed, I got information from BOP counsel that said they did not have a compassionate release application on file for him at Butner. I know that the application is included in the defense papers, but they did not include the response from the warden. And in my investigation, I was trying to get the

> response from the warden. Because, obviously, that makes sense, right? What did the jail say when the Mr. Masecchia raised all of these concerns? And I think that goes back to the credibility piece. To this day, the BOP says it doesn't exist. There was no application made; therefore, we don't have a letter to give you. I found that out 18 minutes after I filed. I let counsel know. I've still not been provided a letter. You would think that the warden would have been in the best position, in the first instance, to say, hey, you're getting this, this, this, and this. We think . . . your explanations or your excuses here are a facade, a means towards an -- an end towards a means.

*See* Tr., Oral Argument [05-30-25] at 28:6-25. In response, defense counsel initially blamed the representation on a "typo," and then pivoted by arguing that that it did not matter whether they had satisfied the mandatory exhaustion requirements, *id.* at 33-34, and that what he really meant when he wrote that the Warden had sent a letter to the defendant denying compassionate release is that the Warden failed to respond within 30 days, *id.* at 33:11-12, 35.

Despite acknowledging that the defendant carries the burden and that if any of the three conditions precedent to compassionate release were lacking—such as a failure to satisfy the exhaustion requirement—the Court need not address the remaining conditions to deny the defendant's motion, the Court nevertheless stated: "I think the exhaustion provision is satisfied or excused here." *See* Tr., Oral Argument [05-30-25] at 45. The Court's finding that the exhaustion requirement was satisfied is unsupported by the facts, and its conclusion that the exhaustion requirement could be excused absent a government waiver equally falters because the record does not support the type of "catastrophic health consequence," warranting excusal. *Cf. United States v. Sadlier*, No. 20 CR. 320 (PAE), 2023 WL 6497727, at *4 (S.D.N.Y. Oct. 5, 2023), *appeal withdrawn,* No. 23-7443, 2024 WL 4588750 (2d Cir. Feb. 28, 2024) ("Sadleir's medical conditions, [including prostate cancer] which are familiar for persons of his age (69) and fall short of the life-threatening conditions this Court has found to

justify compassionate release, therefore, do not qualify as extraordinary or compelling.''). Thus, the Court's finding that exhaustion was satisfied or excused is clearly erroneous.

Because the Court's holding that the defendant either satisfied the exhaustion requirement or, in the alternative, the exhaustion requirement warranted excusal constitutes both factual and legal error, the Court should reconsider its decision granting the defendant's motion to avoid manifest injustice.

**B.**    **The Court Should Reconsider its Decision Because the Court Erred as to the Extraordinary and Compelling Circumstances Requirement.**

On May 30, 2025, the Court also found that defendant Masecchia satisfied his burden to establish extraordinary and compelling circumstances under Section 1B1.13(b)(1)(C) because the defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which, the defendant is at risk of serious deterioration in health or death. *See* Tr., Oral Argument [05-30-25] at 46. The Court clearly erred in its analysis of the facts and its conclusion that there are "treatment limitations and resulting time sensitivity[,]" because (i) the medical records conclusively establish ███

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████ *See*

Tr., Oral Argument [05-30-25] at 47:24-25; *compare with* ECF No. 1550 at 239-243. Simply,

the record does not support the Court's findings that there are treatment limitations and time sensitivity pertaining to the defendant's low-risk prostate cancer.

In making its findings, the Court relied principally upon paragraph 9 of the defendant's expert report, which states: ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████ *See* ECF No. 1537-1 at ¶ 9.[5]

As part of the Court's decision to grant compassionate release, it stated: "I've studied the medical records. And, as we've heard here today and seen in the papers, the defendant's argument is regarding his medical care, his medical conditions, **his two types of cancer**, requiring intensive monitoring and follow-up and that he's at serious risk of deterioration in health or death." *See* Tr., Oral Argument [05-30-25] at p. 46 (emphasis added); *see also* Order, ECF No. 1556 ("[Defendant] seeks release from custody because his medical conditions, **specifically two cancers**, require active monitoring, given the treatment constraint created by his prior treatment history, and it is likely that he will not be able to receive the care and treatment he needs in the future.") (emphasis added). However, the Court's finding—that

---

[5] In its response, the government identified major deficiencies in the defendant's expert report as follows: (1) they did not examine Masecchia (*see* ECF No. 1537-1 at ¶3); (2) they did not speak directly to Masecchia (*id.*); (3) they did not speak to any of the doctors at the Bureau of Prisons or at Duke Urology who have examined and treated Masecchia (*id.*); (4) they do not opine that Masecchia has a terminal medical condition (*id.* at ¶¶ 1-10); (5) they did not visit the BOP facility at Butner where Masecchia is housed (*id.*); (6) they do not opine that Masecchia's condition is such that he cannot take care of himself in prison (*id.*); (7) they acknowledged that Masecchia's prostate cancer condition is considered "low risk," (*id.* at ¶4); (8) they did not claim that Masecchia presently has ████████████████████████████████████ (*id.* at ¶¶ 5-6); and (9) they did not review any of Masecchia's medical records in 2025. *Id.* at 7-11.

Masecchia has two cancers—is unsupported by Masecchia's own expert report, ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████ *see* ECF No. 1537-1 at ¶ 5 (emphasis added), and the BOP medical records

provided by the government, ███████████████████████████████████████

███████████████████████████████:[6]



Moreover, paragraph 9 of Masecchia's expert report, the penultimate paragraph that

the Court relied upon, stated that ████████████████████████████████

██████████████████████. Thus, the concerns expressed by

Masecchia's experts are wholly speculative. *See United States v. Radulescu*, No. 19-CR-651

(SHS), 2024 WL 5220421 at *1 (S.D.N.Y. Dec. 26, 2024 ("[W]hile [the defendant] is entitled

---

[6] The National Cancer Institute defines remission, in pertinent part, as "[a] decrease in or disappearance of signs and symptoms of cancer." *See* www.cancer.gov.

to his interpretation of his medical records, those records contain multiple medical appointments with BOP staff members, including medical doctors, the prescription of various medications, as well as referrals to outside medical specialists for consultations and tests… and [he] has failed to show that long-term or specialized medical care [ ] is not being provided or that he is at risk of serious deterioration in health or death.").

While the records submitted to the Court were voluminous, and the deadlines the Court set were tight, the Court overlooked or failed to adequately consider critical portions of the medical records provided by the government.  The medical records established: ███████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████ *See* ECF No. 1550 at 239.  Indeed, the treatment options presented to the defendant extended far beyond ██████████████ that the defendant's experts addressed, *see* ECF 1537-1. Critically, however, the defendant decided to forego these treatment options and to remain in active surveillance.

Moreover, the BOP medical records establish that as recently as ██████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████    █████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████    *Id.* at 242-243 (emphases added); *see also United States v. Lewis*, No.

00-CR-1118 (JSR), 2023 WL 4054508, at *2 (S.D.N.Y. June 16, 2023), *reconsideration denied,*

No. 00-CR-1118 (JSR), 2023 WL 5211310 (S.D.N.Y. Aug. 14, 2023) (denying 68 year old

defendant's motion for compassionate release and observing that "prostate cancer is not an

unusual medical condition in the prison population, and BOP is equipped to treat it and to

arrange surgery when required.").

The Court clearly erred and did not consider the foregoing facts—█████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████—in its analysis and decision to grant the defendant's motion for

compassionate release.  In this regard, the defendant had the burden of proof, significant

control over when he filed his "emergency motion" for compassionate release, and the

obligation to provide the Court with all pertinent medical records.  Nevertheless, despite

having the burden and complete control of the timing and manner of filing, thus giving him

significantly more time to prepare his motion than the government had to respond, the

defendant did not produce any of his 2025 medical records for the Court.  As a result, the

Court had less than 2 days—from May 28 to May 30—to review and digest the voluminous

2025 medical records produced by the government. The defendant should not benefit from the circumstances he created which resulted in the Court overlooking important facts in the medical records that undermined critical tenets of the defendant's motion.

Furthermore, on April 2, 2025, *see* ECF No. 1550 at 146, the defendant again

█████████████████████████████████████████████████████████████

████████:



On April 25, 2025, *see id.* at 144,[7] just weeks before he filed his compassionate release motion wherein the defendant failed to provide the Court with the most pertinent medical records documenting ████████████████████████████████████████

█████████████████████████████████████████████████████████████

Significantly, neither the defendant nor his experts denied or refuted the fact that active surveillance of the defendant's low-risk prostate cancer is the preferred standard of care.

Thus, where, as here, (i) the defendant's prostate cancer is "low-risk;" (ii) he is receiving the "preferred" treatment for most patients; (iii) it is the treatment option the defendant selected; and, (iv) the defendant expressly declined to pursue other treatment

---

█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████

options that have been made available to him, there is not an adequate basis for a court to find finding extraordinary and compelling circumstances warranting compassionate release. *See United States v. Sadleir*, *supra* (finding that defendant failed to establish extraordinary and compelling circumstances where his prostate cancer was under active surveillance).

Based on the above, the Court's conclusion that there are "treatment limitations and resulting time sensitivity[,]" is contradicted by the medical records, the defendant's *repeated choice* to elect active surveillance, and his express declination of other treatment options. *See* Tr., Oral Argument [05-30-25] at 47:24-25; *compare with* ECF No. 1550 at 239-243. Further, the Court's finding that the defendant will not receive adequate care in the future, *see* ECF No. 1556, s*upra*, is equally unsupported, speculative, and runs counter to the Court's statement that "this can be the case -- I think it can be the case without a stain on the BOP's medical care as a general matter, because I don't think it's necessary to -- to conclude that BOP is failing, necessarily, the way I'm looking at it, on these facts." *See* Tr., Oral Argument [05-30-25] at 48:1-5;[8] *see also Lewis, supra* at *2 ("prostate cancer is not an unusual medical condition in the prison population, and BOP is equipped to treat it and to arrange surgery when required.").

In this vein, this case appears to be the first in the country where a court held that low-risk prostate cancer constitutes extraordinary and compelling circumstances warranting compassionate release. The overwhelming weight of authority, from courts within and outside of the Second Circuit, demonstrates that the Court has clearly erred as a matter of law and fact. *See e.g., United States v. Sabir*, 481 F.Supp. 3d 270, 275 (S.D.N.Y. 2020) (no

---

[8] To the extent the court also relied upon U.S.S.G. § 1B1.13(b)(5), in addition to (b)(1)(C), the Court stated only, "I believe this meets the (b)(1)(C) provision, but I believe it also meets the (b)(5) provision, due to the similar gravity, especially, given the circumstances that are unique here on the medical front." Tr., Oral Argument [05-30-25] at 48:14-17.

"extraordinary and compelling" reasons for release where 66-year-old defendant suffered from prediabetes, hypertension, and asthma, and likely had prostate cancer); *United States v. Velazquez*, No. 92-CR-01265, 2023 WL 4851014, at *1 (E.D.N.Y. July 28, 2023) (denying compassionate release where defendant suffered from prostate cancer and hypertension); *United States v. Mungin*, No. 97-CR-1105(LAP), 2020 WL 2847927, at *4 (S.D.N.Y. June 2, 2020) (denying compassionate release where defendant had prostate cancer and pre-diabetes during the Covid-19 pandemic); *United States v. Lika*, No. 84-CR-499 (CS), 2020 WL 2766049, at *2 (S.D.N.Y. May 28, 2020) (denying compassionate release for a 70-year-old defendant with prostate cancer during Covid-19 pandemic); *United States v. Viola*, No. 91 CR 800 (SJ), 2021 WL 4592768, at *1 (E.D.N.Y. Oct. 6, 2021) (denying compassionate release during the Covid-19 pandemic to a 79 year old defendant who served 30 years in prison and suffered from prostate cancer, leakage of brain tissue, and three joint replacements); *United States v. Jones*, No. 3:99-CR-264-1 (VAB), 2020 WL 2782395, at *2-5 (D. Conn. May 29, 2020) (denying compassionate release and disagreeing that there were extraordinary and compelling circumstances where defendant reportedly had bilateral kidney cancer, currently in remission following the removal of portions of both kidneys in two invasive surgeries, chronic kidney disease, hypertension, anemia, hemorrhoids, and benign positional vertigo, as well as recent symptoms consistent with colon cancer and prostate cancer); *United States v. Shakur*, 498 F. Supp. 3d 490, 499-500 (S.D.N.Y. 2020) (denying compassionate release to 69-year-old despite defendant's cancer upon analysis of 3553(a) factors); *United States v. Wiggins*, 472 F. Supp. 3d 23, 24 (W.D.N.Y. 2020) (compassionate release denied during COVID-19 pandemic where 52-year-old defendant claimed anemia, abnormal glucose and prostate cancer and was not especially vulnerable because of advanced age); *United States v. McCutcheon*, No. 14-CR-26S

(1), 2021 WL 732693, at *4 (W.D.N.Y. Feb. 25, 2021) (54-year-old defendant's medical conditions, including asthma, high blood pressure, and prostate cancer, were not extraordinary and compelling reasons to reduce sentence under the medical condition section of U.S.S.G. § 1B1.13 where there was no demonstration that the conditions are terminal illnesses (i.e., a serious and advanced illness with an end-of-life trajectory), nor do they constitute a serious condition, impairment, or age-related deterioration that substantially diminishes McCutcheon's ability to provide self-care); *United States v. Jones*, No. 3:99-CR-264-1 (VAB), 2022 WL 3703954, at *4 (D. Conn. Aug. 26, 2022) (fear of prostate cancer with evidence of screenings was not extraordinary and compelling); *United States v. Velazquez*, No. 92-CR-01265, 2023 WL 4851014, at *1 (E.D.N.Y. July 28, 2023) (denying compassionate release for a defendant with prostate cancer and hypertension); *United States v. Rose*, No. 3:18-CR-177-TJC-PDB, 2023 WL 3863509, at *2 (M.D. Fla. June 7, 2023) (denying compassionate release for a defendant with low-risk prostate cancer); *United States v. Paredes-Machado*, No. 03-CR-80244, 2025 WL 1173012, at *2 (E.D. Mich. Apr. 22, 2025) (denying compassionate release for defendant with low-risk prostate cancer who was attending follow-up appointments every six months); *United States v. Stead*, No. 3:95-CR-30098-CBK, 2024 WL 619736, at *1-3 (D.S.D. Feb. 14, 2024) (denying compassionate release for defendant with low-risk prostate cancer who served 28 years in prison); *United States v. Proctor*, No. 21-2457, 2022 WL 1261762, at *1 (7th Cir. Apr. 28, 2022) (affirming district court's denial of a compassionate-release motion despite defendant's rare blood cancer); *United States v. McFadden*, No. 20-40801, 2022 WL 715489 (5th Cir. Mar. 9, 2022) (affirming denial of compassionate release to an inmate concerned about the risks of COVID-19 and suffering from diabetes, high blood pressure, prostate cancer, and end-stage renal disease); *United States*

*v. Reed*, 464 F. Supp. 3d 854, 861 (E.D. La. 2020) (denying compassionate release to an inmate with high blood pressure, diabetes, coronary artery disease, and prostate cancer when the medical records showed that he was receiving medical care for all conditions and that his ability to provide self-care was not substantially diminished); *United States v. Mendoza-Garibay*, No. 4:13-cr-00281, 2022 WL 2673231, at *6 (E.D. Tex. July 11, 2022) (diagnosis of prostate cancer, high blood sugar, and high cholesterol was not an extraordinary or compelling circumstance warranting compassionate release, even when combined with the risks of the COVID-19 virus); *United States v. Sanchez-Partida*, No. 2:09-cr-00378-001, 2022 WL 2118975 (S.D. Tex. June 13, 2022) (denying compassionate release to an inmate concerned about the risks of COVID-19 and suffering from high blood pressure, hyperlipidemia, diabetes, and "possible prostate cancer"); *United States v. Mateo*, No. H-01-521-1, 2022 WL 4348472, at *3 (S.D. Tex. Sept. 16, 2022) (denying compassionate release despite defendant's prostate cancer); *United States v. Herrera*, No. 01 CR 01098, 2023 WL 3947608, at *3 (N.D. Ill. June 12, 2023) (denying compassionate release despite defendant's prostate cancer and other medical conditions). Consistent with the foregoing, even during the Covid-19 pandemic, the Second Circuit "repeatedly held that a defendant's health condition was not an extraordinary and compelling reason for a sentence reduction[.]" *United States v. Fox*, No. 22-10-CR, 2023 WL 379539, at *2 (2d Cir. Jan. 25, 2023) (collecting cases).[9]

---

[9] The few cases the government has identified wherein compassionate release was granted for a defendant with prostate cancer (although not low-risk prostate cancer like Masecchia's) involved substantially older defendants who sought compassionate release during the COVID-19 pandemic, or were significantly older than the defendant, or had more serious diagnoses, or served far more time in prison, or a combination of the foregoing. *See United States v. Simon*, 482 F. Supp. 3d 151, 153–54 (S.D.N.Y. 2020) (72-year-old defendant vulnerable to the effects of Covid-19 suffering from HIV, chronic obstructive pulmonary disorder ("COPD"), Hepatitis C, prostate cancer, and hypertension); *United States v. Demeo*, No. 17-CR-545 (KAM), 2022 WL 142345, at *1 (E.D.N.Y. Jan. 15, 2022) (compassionate release granted to an 82-year old defendant sentenced to a one-month custodial sentence suffering from coronary artery disease, prostate cancer, and hypertension, among other serious health conditions); *United States v. Tidwell*, 476 F. Supp. 3d 66, 68, 77 (E.D. Pa. 2020) (granting compassionate release where 62-year-defendant had stage four prostate cancer, life expectancy of less

In sum, the Court erred as to specific factual findings and the resulting legal conclusions. First, the Court found that the defendant has two cancers when he only has one. *See* ECF No. 1537-1 at ¶ 5 ███████████████████████████████████ ████████████████████████████████████████████████████████ (emphasis added). Second, the Court credited speculative treatment outcomes by relying upon the fact that the defendant "may" not be able to pursue one form of treatment "if" he elects active treatment. *Id.* at ¶ 9. Third, the Court overlooked the fact that it was the defendant's own decision to forego other treatment options and to elect active surveillance of his low-risk prostate cancer—which is the preferred treatment option for individuals with low-risk prostate cancer and has similar 10-year outcomes as other treatment options. Fourth, the Court's conclusion that "it is likely that he will not be able to receive the care and treatment he needs in the future[,]"is unsupported by the medical records. Indeed, the records establish that the defendant *declined* to speak with other cancer doctors or to pursue active treatment options. The records further confirm that the defendant routinely sees doctors at Butner and Duke Urology, has underwent biopsies and MRIs, and is under active surveillance. Fifth, the defendant is relatively young, healthy, and his release represents an extreme outlier—a

---

than twelve months, and had served twenty-five years of life sentence; finding that twenty-five years' imprisonment was "a very substantial punishment" and "a period of time that promotes respect for the law and provides just punishment"); *United States v. Kelley*, 464 F. Supp. 3d 1134 at 1135, 1137 (N.D. Cal. 2020) (granting compassionate release where defendant served approximately half of 120-month sentence, was diagnosed with late-stage prostate cancer, and had two-year life expectancy); *United States v. Mongelli*, No. 02-CR-307, 2020 WL 6449237, at *1, *3 (E.D.N.Y. Nov. 3, 2020) (finding extraordinary and compelling reasons where the defendant had only 3 years remaining on a 288 month sentence and suffered from prostate cancer and had a "weakened immune system" due to radiation treatment and the "circumstances of his confinement 'substantially diminish[ed]' his 'ability ... to provide self-care' " due to his "serious underlying health condition, his recent COVID-19 infection, and the failure of the Bureau of Prisons to prevent and control a COVID-19 outbreak" at his facility).

defendant with low-risk prostate cancer released after serving less than 3 years, which is less than half of his sentence, when many defendants around the country with prostate and other cancers are routinely denied compassionate release.  *See, e.g.*, *Lewis, supra* at *2 ("[P]rostate cancer is not an unusual medical condition in the prison population, and BOP is equipped to treat it and to arrange surgery when required.").  Thus, the Court's factual and legal finding that the defendant satisfied his burden to establish extraordinary and compelling circumstances is clearly erroneous and, as a result, the Court should reconsider its decision to release the defendant to avoid manifest injustice.

### C.    The Court Should Reconsider its Decision Granting the Defendant's Motion Because it Erred in Analyzing the Section 3553(a) Factors.

Finally, the Court erred by failing to consider or adequately weigh the §3553(a) factors. Although a district court is presumed to have faithfully discharged its duty to consider sentencing factors, *see United States v. Fernandez*, 443 F.3d 19, 30 (2d Cir. 2006), and "robotic incantations" are not required, *see United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005), in the compassionate release context courts are still required to weigh the 3553(a) factors. *United States v. Cargo,*  No. 21-395-CR, 2022 WL 244083, at *2 (2d Cir. 2022); *United States v. Ebbers*, 432 F. Supp. 3d 421, 430–31 (S.D.N.Y. 2020) (the court should assess whether 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence).  The § 3553(a) factors that a district court must consider in granting or denying compassionate release include "the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence,

and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities." *United States v. Seshan*, 850 F. App'x 800, 801–02 (2d Cir. 2021) (citing *United States v. Roney*, 833 F. App'x 850, 852 (2d Cir. 2020).

The Court's §3553(a) analysis failed to consider and weigh many of the facts the government argued in its response, as further described in ECF No. 1488. For example, with regard to the nature and circumstances of the offense, the record is devoid of any indication that the Court considered specifics, such as the factual basis of the plea agreement wherein the defendant admitted that a corrupt DEA agent provided the defendant with the identities of confidential informants, or that it weighed those details in the context of a major corruption case where a defendant has ties to organized crime. As the government explained, the identity of informants is among the DEA's most protected secrets, and trial detail provided to the Court described that the corrupt DEA agent, while protecting the defendant's drug operations, provided the identities of three confidential informants to the defendant and others through an elaborate conspiracy. *See* Tr., Oral Argument [05-30-25] at 19 ("It doesn't get more dangerous than that…the DEA's most protected secret."); *see also* ECF No. 1488. In this regard, the record is silent as to consideration of the defendant's role in receiving and exposing informant identities in the context of operating a large-scale drug operation.

The record is also silent as to the Court's consideration of the impact that the nature and circumstances of the offense and the defendant's conduct had on law enforcement, the public's trust in the criminal justice system, and even the criminal defense bar. Indeed, when an individual elects, or a defense attorney recommends that an individual, to cooperate with the government, they make those choices with the expectation that law enforcement agents are not corruptly disclosing the identities of their informing clients to the very individuals, like

the defendant, who are part of the criminal groups they are informing on. Compromising source identities exposes sources and their families to grave danger and stymies law enforcement's missions. This defendant was integral to the corrupt conduct surrounding this case, and the chilling effect of his conduct, including the outing of confidential informants— is far-reaching, insidious, and highly detrimental to the criminal justice system. The record is silent as to the Court's consideration of the foregoing and, to the extent the Court did consider it, it did not appropriately weight the foregoing in determining whether the Section 3553(a) weighed against granting the defendant's motion.

Regarding the defendant's history and characteristics, the defendant helped to orchestrate the corrupt protection of a DEA agent on behalf of a major drug trafficking organization. Indeed, it was the first case of its kind in the history of the Western District of New York, and the corrupt DEA agent's protection enabled the defendant's criminal conduct to persist for many years and extended from Buffalo to the Southern Tier, to New York City, and even to a failed DEA Las Vegas case targeting the defendant in 2004. *See* ECF No. 1488 at 12-13 (describing protection by the corrupt DEA agent in regarding to the Las Vegas case); *see also* ECF No. 46, Introduction at ¶4 ("Defendant MASECCHIA had been a target or subject of several DEA cases during defendant BONGIOVANNI's tenure as a DEA special agent, but defendant MASECCHIA was never arrested or charged in any DEA cases or investigations during defendant BONGIOVANNI's tenure as a DEA special agent."); ECF No. 1550 at 26. Moreover, there was proof, both in the indictment and as significantly amplified by the evidence in the *Bongiovanni* trial, *see* ECF No. 1488, that the defendant was a member of the mafia and that he made statements indicating that he had to kick up a portion of his drug proceeds to others in the organization.

Yet, the record does not demonstrate any consideration of the defendant's *admitted* connections to the mafia, or the evidence adduced at the *Bongiovanni* at trial linking the defendant to Italian organized crime.  The Court never mentioned the word mafia, or organized crime, or made any reference to the defendant's organized crime connections in the context of the 3553(a) factors.  While the weight to be given any particular sentencing factor is within the Court's discretion, a defendant's membership in a gang or organized crime group is often significant when courts evaluate the 3553(a) factors, including the history and characteristics of a defendant.  *See  United States v. Messina*, 806 F.3d 55, 67 (2d Cir. 2015) (considering [the defendant's] longstanding participation in organized crime among other Section 3553(a) factors); *United States v. Miller*, 41 F.4th 1019, 1024 (8th Cir. 2022) (noting that in varying upward, the district court explained that [the defendant's] "single prior burglary conviction didn't adequately reflect his extensive history of theft, burglary, and participation in organized crimes."); *United States v. Transe*, No. 17-CR-00559-2 (CBA), 2021 WL 25371, at *2 (E.D.N.Y. Jan. 4, 2021) (noting that while [a defendant]  was not directly involved in organized crime, "that he associated, likely knowingly, with individuals who were so involved," weighed against the defendant in consideration of the 3553(a) factors); *United States v. Donato*, No. 03-CR-929-9 (NGG), 2020 WL 3642854, at *2 (E.D.N.Y. July 6, 2020), *aff'd,* 848 F. App'x 485 (2d Cir. 2021) (membership in an organized crime family was a 3553(a) factor, among others, weighing against release); *United States v. Dean*, 494 F. Supp. 3d 252, 255 (W.D.N.Y. 2020) (history of gang membership was a 3553(a) factor, among others, that weighed against release).

Based on the record, the Court erred by either failing to consider certain facts relevant to the 3553(a) analysis and/or in how it assessed certain facts—namely, decades of substantial

drug trafficking protected by a corrupt DEA agent in the context of the defendant's association, membership, and connections to organized crime.   And, while "robotic incantations" are not required to demonstrate that a Court considered the 3553(a) factors, *see Crosby, supra*, failure to mention certain facts can support an inference that a district court failed consider them—much less grapple with them.   *See United States v. Delgado,* 971 F.3d 144, 159 (2d Cir. 2020) (remanding a case for resentencing where the district court was undoubtedly aware of a defendant's juvenile age, but did not reference the defendant's age at all at sentencing, "much less grapple with it," when imposing a life sentence).   While the Court mentioned the defendant's criminal history, it did not weigh his criminal characteristics or consider the severity of his conduct in the context of the facts of the case, *i.e.*, the protection the defendant procured and received from a corrupt DEA agent on behalf of a large-drug trafficking organization with ties—through the defendant—to organized crime.   As an example, in its response, the government pointed out that in 1990 the defendant was involved in a robbery with an individual named Wayne Anderson.   As a part of the indictment charging the defendant, and as the proof established during the *Bongiovanni* trial, in 2012, the defendant used his corrupt DEA agent to ensure that Wayne Anderson, who was arrested by state authorities for drug activity connected to the defendant's larger drug operation, was protected and did not disrupt the defendant's drug organization. *See* ECF No. 1488 at 19-21. Thus, the defendant's criminal activity—even just with Wayne Anderson—spanned a 22 year period. Of course, the defendant's corruption and drug trafficking activities also involved many other individuals over an extended time-period.   *See generally,* ECF No. 1488.

Finally, as referenced above, the defendant served slightly less than 3 years of a 7-year sentence pursuant to a Rule 11(c)(1)(C) plea. The Second Circuit has counseled that

compassionate release may be inappropriate where, as here, a defendant has served only a portion of the stated sentence, which undermines the interests codified in §3553(a). *United States v. Sellick*, No. 21-2328, 2022 WL 16936829, at *2 (2d Cir. Nov. 15, 2022) (collecting cases). In this regard, the Court's findings regarding general and specific deterrence were erroneous. As to general deterrence, and particularly considering that the defendant was originally subject to 15 years of incarceration, serving less than 3 years of a 7-year sentence significantly undermines general deterrence. Regarding specific deterrence, the Court stated: "And I'm not concerned, either, about specific deterrence," but failed to explain why or address specific deterrence in connection with any of the facts of the case, including the defendant's fearsome reputation, decades long history in drug trafficking, firearms possession, and corrupt protection by a DEA agent who disclosed the identities of confidential informants—in the context of the defendant's organized crime connections—or explain how these facts were mitigated to the point where the Court was unconcerned about specific deterrence.[10] In sum, the record demonstrates that the Court either erred in failing to consider certain factors relevant to the 3553(a) analysis or erred in assessing such factors. *United States v. Jenkins*, 854 F.3d 181, 190 (2d Cir. 2017) ("District courts are required to carefully consider on an individualized basis 'the nature and circumstances of the offense and the history and characteristics of the defendant.' 18 U.S.C. § 3553(a)(1). Further, those considerations must be applied in the context of the other § 3553(a) factors."). As a result, the Court should reconsider its decision to release the defendant to avoid manifest injustice.

---

[10] To the extent the Court referenced the defendant's family and friends supporting him, the defendant had the same family and friends when he engaged in his decades-long criminal activity.

## <u>CONCLUSION</u>

Because the Court erred as to the law and facts with respect as to each prong in the compassionate release analysis, the Court should reconsider its decision granting the defendant's motion to avoid manifest injustice, vacate its release order, and remand the defendant to compete his fully justified and previously imposed 84-month sentence.

DATED:  Buffalo, New York, June 12, 2025.

>Michael DiGiacomo
>United States Attorney

BY:    s/ JOSEPH M. TRIPI
>Assistant United States Attorney
>United States Attorney's Office
>Western District of New York
>138 Delaware Avenue
>Buffalo, New York 14202
>(716) 843-5839
>Joseph.Tripi@usdoj.gov