**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

UNITED STATES OF AMERICA

        *Plaintiff*,               Docket No. 1:19-cr-00227

        - v. -

MICHAEL MASECCHIA,

        *Defendant.*

-----------------------------------------------------------------x

**DEFENDANT'S OPPOSITION TO THE**
**GOVERNMENT'S MOTION FOR RECONSIDERATION**

Elizabeth Budnitz
New York Bar # 4511499
*The Last Prisoner Project*
185 Hall Street, #314
Brooklyn, New York 11205
Phone: (917) 691-0478
Email: liz@lastprisonerproject.org

1

## INTRODUCTION

A Motion for Reconsideration is an "extraordinary request," and may not be granted unless the Movant, here the Government, identifies the need to correct a *clear* error or prevent *manifest injustice*. The Government has not satisfied that heightened standard. First, the Government simply reiterates the same arguments it made in its Response to the Defendant's Motion for Compassionate release and in oral argument before the Court. And second, Mr. Masecchia has, contrary to the Government's assertions otherwise, exhausted his administrative remedies and satisfied the framework of § 1B1.13(b)(1)(C). The Government's Motion should be denied.

## ARGUMENT

### I.    The Legal Standard for a Motion for Reconsideration

"The Federal Rules of Civil Procedure 'do not recognize a motion for 'reconsideration.'" *Sandra S. v. Comm'r of Soc. Sec*., 2023 WL 145543, at *1 (W.D.N.Y. Jan. 9, 2023), *citing Mikulec v. Town of Cheektowaga*, 302 F.R.D. 25, 28 (W.D.N.Y. 2014) (citing cases). Thus, a motion for reconsideration "may be construed as a motion to alter or amend judgment under Rule 59(e) or Rule 60(b)." *Sandra S.,* 2023 WL 145543, at *1. Under the FRCP, "Rule 60(b) provides relief from a final order, while Rule 59(e) may be used by a party seeking to alter or amend a judgment." *Id*. at *1, *citing Richard v. Dignean*, 126 F. Supp. 3d 334, 337 (W.D.N.Y. 2015) (quotation marks and citation omitted).

In addition, "a motion for reconsideration presents 'an extraordinary request.'" *Sandra S.,* 2023 WL 145543, at *1, *citing Van Burskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019). "Courts typically deny motions for reconsideration 'unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Sandra S.,* 2023 WL 145543, at *1, *citing Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "Reconsideration may

be appropriate where the movant demonstrates 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Sandra S.,* 2023 WL 145543, at *1, *citing Metzler Investment Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142-43 (2d Cir. 2020) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). In addition, "[a] court should not grant a motion for reconsideration 'where the moving party seeks solely to relitigate an issue already decided.' *Sandra S.,* 2023 WL 145543, at *1, *citing Shrader*, 70 F.3d at 257. "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court … because a motion for reconsideration is not a vehicle for 'taking a second bite at the apple.'" *Montague v. City of Rochester*, 2021 WL 2042675, at *1 (W.D.N.Y. May 14, 2021) (omitting cases)

## II.    The Court Properly Held That Mr. Masecchia Has Met Any Statutory "Exhaustion" Requirements

The Government argues that the Court's holding that Mr. Masecchia met the First Step Act's exhaustion requirement was contrary to law and fact. Gov't Motion at 9-12. However, the Government brings no new facts to bear in its argument that the Court erred, and, at any rate, Mr. Masecchia has exhausted his administrative remedies.

In order to petition the Court directly for a sentence reduction under the First Step Act, a defendant must wait until after he has fully exhausted his administrative remedies by requesting that the Bureau of Prisons bring a motion on the defendant's behalf, then either receiving a denial of that request or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). In other words, the statute permits a defendant to bring a motion directly to a court after *either* exhausting administrative review of a BOP denial of his request *or* after 30 days had passed since he made his request,

whichever was earlier. *United States v. Brooker*, 976 F.3d 228, 233 (2d Cir. 2020) (emphasis added). In this case, Counsel submitted a letter request to the Warden of FCI Butner Medium I via email on March 4, 2025, at BUX-ExecAssistant-S@bop.gov. Exhibit E: Letter to the Warden and Denial. Counsel also mailed a letter request for compassionate release in the United States Postal Mail to the Warden of the Facility at the following address: Warden of Facility, FCI Butner Medium I, P.O. Box 1000, Butner, NC 27509. *Id*. On March 13, 2025, Mr. Masecchia received a letter from the Warden denying him compassionate release. *Id*. Mr. Masecchia has provided to this Court both Counsel's letter to the warden and the BOP's letter denial of compassionate release. *Id*. Thus, Mr. Masecchia has exhausted his administrative remedies.

The Government indicated in its Motion for Reconsideration that Mr. Masecchia had not exhausted his administrative remedies because he had not included the warden's letter denying him compassionate release in his filings, nor did the BOP have a copy of this letter in its files. Gov't Motion at 8, 10-11. More specifically, the Government stated that 18 minutes after the Government filed its Response, the BOP advised it had no record of this request. Gov't Motion at 4, fn. 3. The Government made this same argument during oral argument, Tr. 27:24-28:25, and the Court considered the Government's argument. Tr. 31:3-35:20. The Court then asked Counsel for Mr. Masecchia to state, "as an officer of the court" whether she had emailed and placed in the United States Postal Mail a letter to the warden requesting compassionate release, and Counsel answered that she had. Tr. 31:20-25.[1] The Court then decided, correctly, that *if* the Court credited Counsel for Mr. Masecchia's affirmation as an officer of the court that she mailed and emailed the

---

[1] To the extent that Counsel incorrectly asserted during oral argument that her statement in Mr. Masecchia's Motion for Compassionate Release that Mr. Masecchia had received a letter denial from the warden was a "typo," Tr. 28:33-34, Counsel was mistaken and apologizes to the Court. This error was entirely Counsel's error, and not Mr. Masecchia's in any way.

letter request to the warden, *and* that the warden did not respond and 30 days had passed, Mr. Masecchia had exhausted his administrative remedies. Tr. 45:21-24; *See* 18 U.S.C. § 3582(c)(1)(A). Thus, the Government's Motion for Reconsideration should be denied on this basis because a) the Government made these same arguments during the oral argument before the Court, the Court considered and rejected those arguments, and thus the Government is relitigating issues that were already decided, *Sandra S.,* 2023 WL 145543, at *1, *citing Shrader*, 70 F.3d at 257; and b) because Mr. Masecchia has exhausted his administrative remedies.

### III.    The Court Properly Held That Mr. Masecchia Satisfied § 1B1.13(b)(1)(C)

On page 8 of their Motion, the Government contends that the Court erred in holding that Mr. Masecchia satisfied the framework of § 1B1.13(b)(1)(C) because a) Mr. Masecchia's █████████ ████████████████ b) he was receiving treatment in the form █████████████ and c) there are no cases of an individual being granted compassionate release ██████████████ ███████ Govt's Motion at 8. The Government modifies its argument on page 12, stating that the Court erred because i) Mr. Masecchia's ██████████████ ii) it was Mr. Masecchia's choice to ██████████████ and iii) Mr. Masecchia declined to pursue other treatments. *Id*. at 12. Regardless of which arguments the Government puts forward, the Government's Motion for Reconsideration should be denied, because a) the Government already raised these very same issues in its Response and during oral argument and therefore is relitigating issues that were already decided, *Sandra S.,* 2023 WL 145543, at *1, *citing Shrader*, 70 F.3d at 257, and b) the Court properly found that Mr. Masecchia has satisfied the framework of § 1B1.13(b)(1)(C).

First, regarding the Government's contention that the Court erred in finding that Mr. Masecchia satisfied § 1B1.13(b)(1)(C) because his ██████████████████ ████████████ the Government's Motion for Reconsideration should be denied, because it

already raised these arguments its Response and during oral argument, Gov't Resp. at 6-8; Tr. 27:15-16, 36:16-18, 37:17-19, and the Court considered and rejected that argument. Tr. 46:15-47:20. Furthermore, whether █████████████████████████████ are irrelevant to the Court's consideration of Mr. Masecchia's Compassionate Release Motion, because this does not mean that ██████████  █████████ may not ███████ or return.

Before and during oral argument, the Court carefully considered the declaration from Dr. Nicole Mushero and Dr. Hyunji Do of the Boston Medical Center and the Boston University School of Medicine who, after analyzing Mr. Masecchia's most recent medical records, provided the Court with a sworn declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 setting forth Mr. Masecchia's "serious medical conditions" and his medical treatment while incarcerated in the Bureau of Prisons. Exhibit A: Doctor Declaration and Medical Records at 1. These doctors indicated in their declaration that even if Mr. Masecchia's ████████████████████ ████████████ Mr. Masecchia's ████████ could return ██████████ if he does not obtain adequate treatment. *Id*. at 1-4.

For example, the doctors declared that in their medical opinion, "Mr. Masecchia has numerous serious medical conditions that require close follow up … **to ensure they do not progress**." *Id*. at 1. Though ███████████████████████ they declared, he requires follow up **"so that he may be able to prevent worsening of his diseases in the future."** *Id*. The doctors stated that the failure to provide these follow-ups ██████████████████ **"could lead to delays in identifying progression of** ████████████ **[in the future] and starting curative treatment,"** including specialized treatments that are necessary because of his prior █████████████ for his ██████████████ *Id*. at 3. Regarding his ████████████████ the doctors declared that although Mr. Masecchia was found to be ██████████████████ a failure to provide him with follow ups for

his ███████ **"could result in delayed diagnosis if** ██████ **recurs."** *Id*. at 1-2. This Court did not, as the Government contends, err in its holding because though Mr. Masecchia's ██████ may not be present today ██████████████ the Court considered the doctors' statements that ███████ may ██████ return in the future if he is not given adequate medical care by the Bureau of Prisons.

The Government also contends that the Court erred in finding that Mr. Masecchia satisfied the framework of § 1B1.13(b)(1)(C) because it was Mr. Masecchia's choice to receive treatment in the form of ████████ and he was receiving this treatment. Gov't Motion at 8, 12. But the Government's Motion for Reconsideration must be denied, because the Government proffered this argument both in its Response and during oral argument, Gov't Resp. at 19; Tr. 12:20-13:7, 14-18, 25, 14:11-14; 27:1-10. In addition, the overwhelming evidence that Mr. Masecchia presented in both his Motion and during oral argument demonstrates that the Government is incorrect that Mr. Masecchia was receiving ████████ treatment, or adequate treatment for ████████.

Referring to the declaration that was considered by the Court, the doctors declared (under penalty of perjury pursuant to 28 U.S.C. § 1746) that Mr. Masecchia suffers from ████████ ████████████ - that require close monitoring and follow-up. Exhibit A at 4. However, they declared, "[h]e has not gotten the recommended follow ups in a timely manner, putting him risk of a delayed diagnosis of ████ ██████e." *Id.* at 9-10. "This is especially concerning," the doctors declared, "because possible treatments that may be available for his ████████ are limited because of his prior ████████████████ *Id.*

The doctors also declared that both of Mr. Masecchia's ██████ "require that Mr. Masecchia have access to prompt and routine medical care." *Id.* However, the doctors declared:

**Due to Mr. Masecchia's** ███████████████ **his treatment options for his** ██████████ **are limited. He received** ███████████ ██████████████ and cannot receive further ██████████ treatment to this area for the subsequent 5 years (until 2026). Thus, if he were to opt to treat ██████ in the near future, he may require specialized treatments, including ██████ ████████████ *Id.* at 4.

More specifically, regarding his ██████████ Mr. Masecchia was diagnosed with ████████ ██████████████████ in January 2020 and was treated with c██████████████████ ████████ *Id.* at 2. Though he was found to be ██████████ two years later, in December 2021, the The American Society of ██████████ recommends follow up ████████████ to be monitored every 3 months for 2 years and every 6 months for 3 years afterwards until year 5. *Id.* This includes getting ██████████ every 6 months for the first 2 years, and then annually for the subsequent 3 years. *Id.*

Following these guideline recommendations, the doctors declared:

> **[Mr. Masecchia] has not gotten appropriate follow-up** ████████████ **since 11/2023 for** ██████
>
> He should be seeing his ██████ at least annual [sic] with ██████ annually until December 2026. **Failure to do so could result in a delayed diagnosis if** ██████ **recurs.** *Id.*

Given that the doctors' declaration was dated February 24, 2025, the doctor's notation above indicates that Mr. Masecchia had not gotten appropriate follow-up for his ████████ for 1 year and 2 months.

Regarding his ██████████ the doctors declared that Mr. Masecchia was consequently diagnosed with ██████████ on February 22, 2024. *Id.* at 3. He and his ██████████ agreed to ██████████ the ██████████ as per the American ██████ Association 2022 Guidelines. *Id.* ██████████ consists of the monitoring of blood work every 3 to 6 months with repeat

██████ and ██████ annually. *Id.* However, the doctors declared, as of the writing of the declaration on February 25, 2025:

> **Mr. Masecchia had not gotten his ██████████ and ██████████ that was due one year after his diagnosis.** *Id.* The failure to do this, they declared, could lead to delays in identifying ██████████████ and ████████████ t. *Id.*

As stated previously, the Court carefully considered the doctor's declaration when deciding to grant Mr. Masecchia's Motion for Compassionate Release. But the Court *also* considered a letter from Mr. Masecchia provided as an Exhibit to his Motion for Compassionate Release, in which he provided more detail into the inadequate care he has received. Exhibit D: Masecchia Letter to the Court at 1. Mr. Masecchia wrote that during his first consult with Dr. ████, who was the medical supervisor for the entire complex, including all prisons, the doctor mistook him for another patient and read the wrong records. *Id.* Notably, Mr. Masecchia's statements above are corroborated by his medical records, where the notation for a visit on July 12, 2022, indicates that Dr. ████ wrote that Mr. Masecchia is a "56 y/o Hispanic male inmate," but Mr. Masecchia is decidedly not Hispanic, but is Italian American. Exhibit A at 243, 132. His statements are also corroborated in a visit on June 28, 2023, where the records state: "[Inmate] states that there are some errors on his Chronic care: [inmate] states he [is] Italian not Hispanic and was raised in the US (1st generation)." Exhibit A at 132.

In addition, Mr. Masecchia wrote that he had a ██████████ scheduled at Duke Medical Center for February 22, 2024,[2] and was assured by the ████ team that he would have an appointment within 10-14 days to discuss the results. Exhibit D at 1. It was not until 8 months

---

[2] Mr. Masecchia mistakenly wrote that this occurred on February 22, 2024, but this occurred on February 2, 2024.

later, in October 2024, he wrote, that he was able to speak to the ████ team. *Id.* This, too, is corroborated by Mr. Masecchia's medical records where on February 2, 2024, the doctor's notation on the day of his ████████ states Mr. Masecchia "was instructed to make a return visit with his physician to discuss the ██████████ results within 1-2 weeks of the date of the ████" Exhibit A at 108-110, and he did not receive a comprehensive analysis of the ████ until October 1, 2024. Exhibit A at 92-93.

Mr. Masecchia also wrote that the medical team at Duke informed him that there were multiple appointments scheduled but they were canceled by the camp due to "lack of transportation availability." Exhibit D at 1. This, also, was corroborated by his medical records on October 1, 2024, where the doctor from Duke's notation states that "multiple appointments missed/cancelled for unknown reasons." Exhibit A at 92.

Eventually, Mr. Masecchia wrote, his ████ results proved to be positive for ████ ████. Exhibit D at 1. But his ████ tests and various scans for ████ were delayed and denied for months at a time. *Id.* Mr. Masecchia wrote to the Court that he was in "constant fear of possible ████████████ that is presently in ████████." *Id.* In addition, he still had not received a comprehensive treatment plan for his ████████████ *Id.*

The Government contends that the Court erred in that it overlooked or failed to adequately consider portions of the medical records provided by the Government. Gov't Motion at 15. However, these entries do not call into question the Court's decision, because the Court properly weighed the facts that the Government presented both in its Response and in oral argument with

the facts that Mr. Masecchia presented in his Motion and during oral argument,[3] and the Court made its decision accordingly.

More specifically, the Government contends that the Court overlooked or failed to adequately consider medical records from March 24, 2025, in making its' decision. Gov't Motion at 15. First, the Government's Motion for Reconsideration should be denied because the Government raised this issue in oral argument. Tr. 24:14-26:1. In addition, the Government is correct that on this occasion Dr. Thomas ████ discussed various treatment options with Mr. Masecchia, and Mr. Masecchia declined to speak to other doctors after his consult with Dr. Polascik. Gov't Motion at 15-16, *citing* ECF No. 1550 at 239-240. But the Government does not proffer that other portions of this medical record from March 24, 2025, in fact support the Court's finding in that in this particular case, Mr. Masecchia's specific case, his ████ requires "intensive monitoring and follow-up and that he's at serious risk of deterioration in health or death," Tr. 46:16-21, that there is a discrete confluence of medical circumstances that should be addressed outside of the BOP, Tr. 47:21-25, and his need for prompt and routine medical care will be unconstrained and his prognosis is markedly better outside of BOP custody. Tr. 48:6-9.

For example, Dr. ████ noted that Mr. Masecchia had a history of ████ and received ████ and that he was told by his prior ████ team that he should not receive any ████ for at least 5 years through 2026. Exhibit A at 92. The doctor also told Mr. Masecchia that the "possible risks" of ████ ████ include "████," and

---

[3] Due to the tight timeframe between the filing of the Government's Response and the Oral Argument, Counsel for Mr. Masecchia was not able to file a Reply to the Government's Response but responded to the Government's filing during oral argument.



"u███████" (i.e. a misdiagnosis ███████████████)[4] missed opportunities for a cure, and "the need for continual monitoring with ████████████████████████████████ ██████ and their attendant risks/costs and possible ████████████ *Id.* at 92-93.[5] The doctor also told Mr. Masecchia that "30-40% of patients who are thought to have low risk ███████ may actually have intermediate or on occasion high risk ██████ due to ████████████████ *Id.* Dr. Polascik noted that as with any ██████ treatment, future development, persistence, or recurrence of ████████ is possible, that Mr. Masecchia would need to be on a ██████████ protocol, and that "by electing [████████████████ or no treatment, and because this is ██████████ there is always the chance of ██████████ and the loss of the window of curability," and "this is a risk that the patient must be willing to accept." *Id.* In addition, for men with "██████████ disease, ████████████ comes with a higher risk of developing ██████████ compared to definitive treatment." *Id.* In sum, this doctor's note indicates that prompt and comprehensive care are absolutely necessary for Mr. Masecchia's survival from ██████. However, Mr. Masecchia has indicated that he is not receiving this treatment from the BOP.

The Government also contends that the Court overlooked or failed to adequately consider medical records from April 2, 2025, and April 25, 2025,[6] in making its' decision, because the records indicate that Mr. Masecchia declined treatment options. Gov't Motion at 17. But the medical records on April 2, 2025, also indicate that Mr. Masecchia preferred to wait and further

---

[4] ████████████████████████████████████████████████████
████████████████████████████████████

[5] Dr. Polascik did indicated that Mr. Masecchia has been seen by multiple providers in the BOP, but in looking at Mr. Masecchia's medical records as a whole, clearly this visit with the Duke doctor was far more informative and comprehensive that any other visit with BOP doctors.

[6] There is no notation indicating the Mr. Masecchia declined treatment in the April 25, 2025, medical records. *See* ECF No. 1550 at 144-145.

discuss options with a ████████████ before his decision. Certainly, consulting a doctor before making a crucial decision as to whether he should engage in "████████████ ECF No. 1550 at 146, and obtain a ██████████████████████████ is reasonable for Mr. Masecchia, particularly since, as the Government states it its' Motion, "████████████ … is the preferred standard of care." Gov't Motion at 12, 15, 17, 22.

As stated previously, Mr. Masecchia presented overwhelming evidence in both his Motion for Compassionate Release and during oral argument that he was not receiving the care that he required from the BOP.

For example, Mr. Masecchia presented to the Court that:

- On September 9, 2022, Mr. Masecchia met with a doctor who informed him he had ████████████████████ Exhibit A at 334. The doctor told Mr. Masecchia that his risk of ████████ was 35% and recommended ████ ████████ Exhibit A at 236, 334, 338.

- Mr. Masecchia received a ██████████████ on February 2, 2024 [more than a year later] Exhibit A at 90. He did not get the results of the ████ until October 1, 2024 [ten months after ████████ Exhibit A at 90.

- A notation from off-site hospital records for October 1, 2024, reads: "multiple appointments missed/cancelled for unknown reasons." Exhibit A at 91-92.

- On February 20, 2024, March 1, 2024, and April 26, 2024, and August 23, 2023, notations order a Duke hospital ██████ follow up. Exhibit A at 32, 35, 40, 56. This indicates that the BOP cannot provide these follow ups, but they must be done at the outside hospital (and the BOP has delayed or missed these appointments repeatedly). *See* Exhibit A at 91-92.

- On February 13, 2025, a notation indicates that Mr. Masecchia's ████ results returned and noted ████████████████████ on ████████████ which means ████████████[7] Exhibit A at 158.

---

[7] ██████████████████████████████████████
██████████████████████ █ ██████████████████████
████████████████████████████
████████████████

- Congressional oversight hearings of the Senate Judiciary Committee,[8] a Department of Justice, Officer of the Inspector General unannounced, on-site inspection of Federal Medical Center (FMC) Devens,[9] a Department of Justice, Officer of the Inspector General inspection of Federal Correctional Institution Sheridan[10] and a Department of Justice, Office of the Inspector General Report on BOP ██████████████████████ Practices[11] indicate concern with the BOP's ability to provide adequate and necessary medical care, and more specifically ██████ care, to inmates.

In arguing that the Court erred, the Government also contends that "there appear to be no cases of compassionate release being granted to defendants with ███████████ Gov't Motion at 18. First, the Government raised this argument previously in its Response, and during oral argument. Gov't Resp. at 18; Tr. 41: 1-7. Secondly, the Court explicitly stated that its decision was based upon the specific and unique circumstances of Mr. Masecchia's case, in that he was diagnosed with ████████████ treatment options are limited, and there have been delays in Mr. Masecchia obtaining that care. Tr. 46:15-47:25. Furthermore, there are plenty of cases in which a Court granted compassionate release pursuant to § 1B1.13(b)(1)(C) where the BOP failed to adequately treat all types of medical conditions. *See, e.g. United States v. Potts*, 2024 WL 3898936 *6 (M.D.N.C. August 22, 2024) (failure to diagnose melanoma); *United States v. Tagliaferro*, 2024 WL 5077350, at *4-5 (S.D.N.Y. Dec. 11, 2024) (failure to treat blood pressure); *United States v. Denise*, 2024 WL 4851154 *5 (D. Idaho Nov. 21, 2024) (granting release where

---

[8] U.S. Senator Dick Durbin, Letter to Rob Shriver, Acting Director of the U.S. Off'c of Personnel Management, Jan. 14, 2025, *available at* durbin.senate.gov at: https://www.durbin.senate.gov/newsroom/press-releases/durbin-urges-opm-to-approve-special-pay-rate-for-bop-employees-to-address-critical-staffing-shortages-at-bop-facilities-nationwide.

[9] U.S. DEP'T OF JUST. OFF'C OF THE INSPECTOR GEN'L, *Inspection of the Federal Bureau of Prisons' Federal Medical Center Devens* i, Dec. 2024.

[10] U.S. DEP'T OF JUST. OFF'C OF THE INSPECTOR GEN'L, *Inspection of the Federal Bureau of Prisons' Federal Correctional Institution Sheridan* ii, May 2024.

[11] U.S. DEP'T OF JUST. OFF'C OF THE INSPECTOR GEN'L, *Evaluation of the Federal Bureau of Prisons Colorectal* ██████ *Screening Practices for Inmates and Its Clinical Follow-up on Screenings* ii, May 2025.

the defendant received medical care, but the "the Court [was] concerned the treatment she received has not been sufficient under the circumstances."); *United States v. Siclovan*, 2024 WL 3406744, at *7 (D. Or. July 12, 2024) (failure to provide defendant with specialized treatment for mental health conditions) *United States v. Bang*, 2024 WL 1051582, at *4 (S.D.N.Y. Mar. 11, 20924) (granting release where defendant "requires expert and specialized medical care [for his cataracts] that he cannot receive in prison but his condition "could be treated if he is released."); *United States v. Ranes*, No. 3:06-cr-00041, slip op. at 5 (D. Alaska Nov. 22, 2022) (failure to treat intestinal issues).

Finally, and most crucially, the Government contends that the Court erred in considering § 1B1.13(b)(5) as a basis to justify compassionate release, stating that "the Court relied upon the same facts and rationale underlying § 1B1.13(b)(1)(C)." Gov't Motion at 9, fn. 4. In fact, the Government is incorrect that the Court relied on the "same facts and rationale," because a Court's analysis under (b)(5) is entirely different than (b)(1)(C).[12] In deciding that Mr. Masecchia had presented extraordinary and compelling reasons under (b)(5), the Court referenced the "circumstances that are unique here on the medical front" presented in Mr. Masecchia's case. Tr. 47:21-23. The Court also referred to 1B1.13(d), "speaking to rehabilitation" which the parties "talked about during oral argument" that "may be factored into the mix," and "has been." Tr. 52:11-16. The Court certainly did not err in holding that Mr. Masecchia presented extraordinary and compelling reasons under (b)(5) considering the very specific and unique medical circumstances in the case, and Mr. Masecchia's exceptional rehabilitation.

---

[12] Specifically, § 1B1.13(b)(5), the "catch all" category, authorizes the Court to recognize as a basis for a sentence reduction "any other circumstances or combination of circumstances that, when considered by themselves or together" "are similar in gravity" to the other enumerated reasons. § 1B1.13(b)(5).

Regarding 1B1.13(b)(5), the United States Sentencing Commission emphasized the centrality of judicial discretion to the catchall: "The Commission continues to believe . . . that judges are in a unique position to determine whether the circumstances warrant a reduction." *Id.* Indeed, the Commission limited judicial discretion under (b)(5) in only one way: changes in the law may not be considered, *See* § 1B1.13(c) (which indicates that all other circumstances except this one may be considered). The Court in Mr. Masecchia's case used its considerable discretion to determine that Mr. Masecchia presented extraordinary and compelling reasons for relief under 1B1.13(b)(5), and for all of the reasons above, the Government's Motion for Reconsideration should be denied by the Court.

## IV.    The Court Properly Weighed the § 3553(a) Factors

In its Motion, the Government contends that the Court erred in failing to consider and appropriately weight the 18 U.S.C. § 3553(a) factors. Gov't Motion at 9. But the Government made these same arguments in its' Response and during oral argument, with many of the same facts and details.[13] Gov't Resp. at 23-27; Tr. 17:15-16:2, 19:18-25, 40:17-25. The Government's Motion is simply attempting to gain "another bite of the apple" from this Court. *Montague*, 2021 WL 2042675, at *1. Regardless, Mr. Masecchia made extensive and comprehensive arguments that he did in fact satisfy the § 3553(a) factors, and the Court did not err in finding that they were satisfied.

Regarding the "nature and circumstances of the offense" and the "characteristics of the defendant," it is unfortunate that the Government feels compelled to focus on the prior circumstances of the offense at issue here, testimony from a trial that is not Mr. Masecchia's, and

---

[13]

Mr. Masecchia's criminal history. But in *Pepper v. United States*, the Supreme Court instructed courts that they can, <u>and indeed must</u>, consider *post-offense* developments, which provide "the most up-to-date picture" of the defendant's history and characteristics and "shed light on the likelihood that [the defendant] will engage in future criminal conduct." 562 U.S. 476, 492 (2011). The Supreme Court reiterated this yet again in *Concepcion v. United States*, when it stated that "[t]here is a longstanding tradition in American law, dating back to the dawn of the Republic, that a judge at sentencing considers the whole person before him or her as an 'individual,'" and that the court must consider the defendant "on that day, not on the day of his offense or the date of his conviction," 597 U.S. 481, 491 (U.S. June 27, 2022), and this includes in the re-sentencing context such as compassionate release as well. As Justice Neil Gorsuch stated in *Pulsifer v. United States*, Congress passed the First Step Act "by promising more individuals the chance to avoid one-size-fits-all mandatory minimums and receive instead sentences that accounted for their particular circumstances and their crimes." 601 U.S. 124, 155, 155 (Mar. 15, 2024) (Gorsuch, J. dissenting). The Court used its discretion here to make a determination with regards to the § 3553(a) factors that accounted for Mr. Masecchia's particular circumstances and his crimes.

To argue that the Court did not adequately consider the § 3553(a) factors, the Government refers to allegations regarding Mr. Masecchia's alleged ties to the mafia primarily from the testimony of Ron Serio, who was a drug dealer that confessed to funding bribes to DEA agent Joe Bongiovanni during Mr. Bongiovanni's trial.[14] Gov't Motion at 24-25. Mr. Serio's testimony is, however, suspect because he received a two-year sentence from the Government in exchange for

---

[14] Dave McKinley, *Key Witness in Joe Bongiovanni's Case Receives 2-Year Prison Sentence*, 2WGRZ NEWS (June 6, 2025), https://www.wgrz.com/article/news/crime/key-witness-joe-bongiovanni-case-receives-2-yeard-prison/71-e91a0809-2afa-4251-b3db-9bdfbe5a439f

testifying against Mr. Bongiovanni.[15] The Government also refers extensively to the Superseding Indictment against Mr. Masecchia, Gov't Motion at 25, *citing* ECF No. 46, which is, of course, only a charging document with allegations that have not been testified to in court or proven at trial.

At any rate, the Court did not, as the Government contends, fail to consider the facts that the Government presented. Gov't Motion at 9. In fact, the Court explicitly stated during oral argument that "each side had strong and valid points" Tr. 42:13-15, and that the Court had "spent time" with the "the PSR" and "the sentencing transcript." Tr. 49:7-8. The Court acknowledged that the case involved "significant marijuana trafficking" and a "firearm charge," and considered "the broader circumstances in the case," "the alleged [and admitted] corruption," "associations and conspiratorial behavior," and "bribery," Tr. 49:9-23, and the Court "considered heavily the Government's arguments" on the §3553(a) factors. The Court recognized that Mr. Masecchia's crimes were serious, and made its decision after weighing these facts, and the facts proffered by Mr. Masecchia. The Government painted one picture of Mr. Masecchia, and Mr. Masecchia painted an entirely different picture, one that the Court credited.

For example, since Mr. Masecchia has been incarcerated, he has been a model inmate and an exceptional mentor for other inmates. His first job when he arrived in prison was working in the Education Unit as a teacher, where he helped fellow inmates' study and prepare for their GED. *Id*. He then obtained a job in Recreation, and the prison made him Activities and Events Coordinator for all 1,200 inmates. *Id*. Once he moved facilities, he obtained a job in Horticulture,

---

[15] *Id*. In addition, looking more closely at Mr. Serio's testimony, the transcript demonstrates the he testified it was his "understanding" that Mr. Masecchia was allegedly in the mafia, ECF No. 1464 at 13, that there was "speculation that [Mr. Masecchia] was possibly made with the organization," ECF No. 1177 at 43, and that he "was aware" that Mr. Masecchia was in the mafia, ECF No. 1178 at 11 and that Mr. Masecchia allegedly "told him" he was in the mafia. ECF No. 35. To the extent that Mr. Masecchia contends that the Government's specious and unreliable allegations that Mr. Masecchia was a member of the mafia and committed robbery with a gorilla mask in 1990, Counsel also refers this Court to her statements during oral argument. *See* Tr. 5:4-23.

and then, in order to move to a better dormitory, he worked for UNICOR and received his 500-hour certification. *Id*. Mr. Masecchia currently works as a Head Orderly for Outdoor Religious Services. *Id*.

Mr. Masecchia has taken <u>27 courses</u>, including Drug Abuse Education in the Chapel Parts I and II and the Non-Residential Drug Abuse Program (NRDAP). *Id*. at 2. He has also taken Intro to Hobby Craft, Creative Writing, Life Skills and Math, Spanish I, Intro to Recreation Facilities, Green Living, Financial Literacy, ACE Horticulture, Servsafe Food Handling Certification, Solar System, Business, Diabetes Recreation Class, Hypertension Recreation Class, Acoustic Guitar, Nutrition, Camp intro to Hobby Craft, Acoustic Guitar Part II, Poetry, Mindset, Employment Careers, Cuban Missile Crisis, UNICOR 500 hour Certification, Health and Wellness in the Lifespan, and Parenting. *Id*. He is also currently enrolled in Embracing Interfaith Cooperation and Movies with a Message in Chapel. *Id.*

Furthermore, Mr. Masecchia was a beloved high school English teacher and coach for 30 years. Exhibit B: Clemency Letters of Support; Exhibit C: Sentencing Letters of Support. During this time, he touched the lives of many, garnering praise and admiration from his extended family, students, principals, and community members, who have written <u>30 letters of support</u> attesting to his upstanding character.  Exhibit B: Clemency Letters of Support; Exhibit C: Sentencing Letters of Support. And finally, the Court considered Mr. Masecchia's own letter to the Court, in which he expressed undying remorse for his crime and his commitment to writing his wrongs. Exhibit D: Masecchia Letter to the Court.

Regarding the "nature and circumstances of the offense," *see*. § 3553(a)(1), this Court may consider that Mr. Masecchia was convicted of a non-violent drug offense with no demonstrable victims, and there was no violence implicated in the instant offense. *United States v. Sawicz*, 453

F. Supp. 3d 601, 606 (E.D.N.Y. 2020) (finding that "the defendant does not pose such a danger to the public" where "neither the violation on which the defendant is currently serving his prison sentence nor the conduct involved in the underlying crime involved violence.").

Regarding the need to afford adequate deterrence to criminal conduct and protect future crimes by Mr. Masecchia, the Court was correct in its' determination that with his extensive family and community support, there is no danger that he will commit a crime again. Exhibit B: Clemency Letters of Support; Exhibit C: Sentencing Letters of Support. In addition, Mr. Masecchia's age weighs in his favor, in that "past fifty years old there is a significantly lower rate of recidivism," *United States v. Payton*, 754 F.3d 375, 377 (6th Cir. 2014).  According to a recidivism study published by the United States Sentencing Commission, his older age makes him half as likely to reoffend, in that only 24.7% of offenders in who were aged 50 and older, like Mr. Masecchia, were rearrested after their release from prison, as compared to a 66.4% rate for inmates who are 21 to 25 years old[16] and this doesn't account for the extraordinary rehabilitation that Mr. Masecchia has exhibited. Furthermore, even after being granted compassionate release, Mr. Masecchia is still subject to the entirety of his federal term of supervision.

Regarding the need to provide just punishment for the offense, the Government contends that the Court erred in its holding that the § 3553(a) factors were satisfied because Mr. Masecchia had only served three years of his sentence, Gov't Motion at 9, an argument the Government already made in both its Response and during oral argument. Gov't Resp. at 11-12; Tr. 18:15-18. But the Court correctly held that three years of a sentence in federal prison is "not a trivial amount of time to serve." Tr. 50:20-21.  Mr. Masecchia certainly understands the severity of his more than

---

[16] U.S. SENT'G COMM'N, *Recidivism Among Federal Offenders: A Comprehensive Overview* at 23 (Mar. 2016).

three years away from his family, where he stated in this letter to the Court: "I would like to sincerely apologize to my family and my community for any unnecessary pain or harm I have caused them due to my insensitive and selfish behavior." Exhibit D: Masecchia Letter to the Court.

Regarding the § 3553(a) factor expressing the need to provide Mr. Masecchia with medical care outside of prison walls, Mr. Masecchia's urgent need to obtain medical care for ███████ ██████ "in the most effective manner weighs heavily in favor of a sentence reduction." 18 U.S.C. § 3553(a)(2)(D); *see, e.g., United States v. Garcia Nava*, 2024 WL 221439, at *2 (S.D. Cal. Jan. 19, 2024) (taking into account the defendant's need for "chronic but fairly minor treatment" for his medical conditions and observing that "[t]he treatment is not always timely delivered.") *United States v. Perdigao*, 2020 WL 1672322, at *4 (E.D. La. Apr. 2, 2020) (finding it significant that the defendant "faces the prospect of being unable to receive the medical care he desperately needs to treat his serious heart conditions if he remains in prison."). As stated above, Mr. Masecchia has not received appropriate medical care, and given the state of the BOP medical system, he is not likely to receive appropriate care in the future.[17]

## CONCLUSION

The Government has filed this Motion for Reconsideration simply to obtain a "second bite at the apple" because this Court considered and rejected its arguments, weighed Mr. Masecchia's arguments, and granted Mr. Masecchia compassionate release based on §§ 1B1.13(b)(1)(C) and 1B1.13(b)(5). In granting Mr. Masecchia's Motion for Compassionate Release, the Court recognized the unique circumstances of Mr. Masecchia's need to be released in order to get the

---

[17] To the extent that the Government contends that Mr. Masecchia's sentencing arguments "focused upon the same things that were proffered in his compassionate release motion," Gov't Motion at 2-3, the Court correctly referred to 1B1.13(e), that medical issues need not have been unforeseen at the time of sentencing. Tr. 46:13-14.

proper ███ treatment that the Bureau of Prisons simply cannot provide. As such, this Court should deny the Government's Motion for Reconsideration.

Dated: New York, New York
      July 14, 2025

                              Respectfully submitted,


                              _/s/_Elizabeth Budnitz___
                              Elizabeth Budnitz
                              New York Bar # 4511499
                              *Counsel for Michael Masecchia*
                              The Last Prisoner Project
                              185 Hall Street, #314
                              Brooklyn, New York 11205
                              Phone: (917) 691-0478
                              Email: liz@lastprisonerproject.org